W. G. TAYLOR COMPANY, Respondent, vs. BANNERMAN and others, Appellants.

*December 12, 1903—January 12, 1904.*

*Contracts: Mutuality: Exclusive agency: Breach: Damages.*

1. A contract between principal and agent, signed by both parties, by which one party, the owners of a stone quarry, appointed the other as their exclusive agent for Illinois and Wisconsin for the sale of certain described stone at prices fixed therein, and agreed to quote no prices to others without the agent's consent, is not void for want of mutuality, but at least re--

quires the agent to act in good faith and use due diligence in bringing the principal's stone to the notice of possible purchasers for the purpose of sale to them.

2. In an action by the agent to recover damages for breach of such a contract, it appeared that the principal sold stone to others at the contract price, and that the agent offered to sell the same stone to the same parties at the same price. *Held*, that the agent was not damaged by the sale.

.3. By a written agreement the agent in such a case consented to the sale of a certain quantity of stone to a third party at a fixed price "in consideration of certain conditions," and it was shown by other evidence that the consent was granted upon the understanding that the purchaser had worked up certain private jobs of paving, as distinguished from ordinary city contracts, and had an unexpired contract with the principal for stone. *Held*, that the permitted sales were limited to such purposes only, and that the agent was entitled to damages for all sales made by the principal to such purchaser which were used for purposes outside of such understanding.

·4. After having filled part of an order made by an agent under a contract with a third person, the principal refused to supply any more stone on the ground that the agent had failed to pay him $600 due for stone already shipped. At that time the agent had a well founded claim against the principal for damages for breach of the contract amounting to more than the sum due. The agent was unable to obtain the stone elsewhere, and the purchaser thereupon cancelled the contract. *Held*, that the principal was liable to the agent for the profits lost by reason of the failure to supply the stone.

5. Where a principal contracts with an agent to sell to or through the agent the entire output of a stone quarry, and the principal sells the entire output to a third party, and the agent has also taken orders sufficient to absorb it all, the agent cannot recover the difference between the contract and market price upon that sold by the principal, and, in addition, recover the difference between the contract and sale price on that for which the agent had taken orders.

APPEAL from a judgment of the circuit court for Waushara county: CHAS. M. WEBB, Circuit Judge. *Modified and affirmed.*

Action to recover damages for breaches of contract. The plaintiff was a corporation engaged at Milwaukee in the business of contracting for the sale of stone. Defendants were

partners owning a granite quarry of limited capacity at Berlin, in this state. During the year 1898 plaintiff had been selling agent for all the product of the defendants' quarry upon an agreed commission. After some negotiation, indicating a desire to change that relation so that the plaintiff should secure a fixed price to defendants and receive any obtainable price above that as its compensation, a written contract was made on February 1, 1899, in the following words:

"We hereby appoint the *W. G. Taylor Co.,* of Milwaukee, our agents for Wisconsin and Illinois, and agree to sell them the following described stone, f. o. b. cars Berlin, Wis., as follows: [List of kinds and prices.] It is further agreed that the *W. G. Taylor Co.* are our exclusive agents for Wisconsin and Illinois, and we will quote no prices to others without their consent. This agreement is understood to be in force for the full term of one year from February 1st, 1899. [Signed by both parties.]."

The words "make no prices" were shown to have the additional significance in the trade of "make no sales." It was claimed, and the court found, that defendants committed numerous breaches of the contract, whereby plaintiff was deprived of profits aggregating $3,954.45, which sum was allowed it as damages. An undisputed balance of $643.25 due from plaintiff was allowed on defendants' counterclaim, and for the balance, $3,311.20, together with interest from the date of the commencement of the action, judgment was rendered in favor of plaintiff, from which the defendants appeal.

For the appellants there was a brief by *Turner, Pease & Turner,* and oral argument by *W. J. Turner.* They contended, *inter alia,* that the agreement relied upon by plaintiff is void for want of mutuality. *Hoffman v. Maffioli,* 104 Wis. 630; *Teipel v. Meyer,* 106 Wis. 41; *Dodge v. Hopkins,* 14 Wis. 630, 636; *Atlee v. Bartholomew,* 69 Wis. 43; *American C. O. Co. v. Kirk,* 68 Fed. 791; *Davie v. Lumbermen's M. Co.* 93 Mich. 491; *Bailey v. Austrian,* 19 Minn. 535; 1 Parsons, Contracts, 499, note Z; *Rafolovitz v. Am. T. Co.* 73

Hun, 87, 25 N. Y. Supp. 1036; *Campbell v. Lambert,* 51 Am. Rep. 1.

For the respondent there was a brief by *Winkler, Flanders, Smith, Bottum & Vilas,* and oral argument by *F. H. Remington.*

Dodge, J. Appellants' first position is that the entire contract of February 1, 1899, was void for want of mutuality, for that the plaintiff did not thereby bind itself to purchase any stone or do any other thing. This position we deem untenable. The signature of plaintiff's name to that paper was obviously for the purpose of acceptance. The presumption is that such signing was done for some purpose, and no other is apparent. If an acceptance, it bound the plaintiff to perform any acts on its part necessarily implied either from those things which defendants were bound to do or from the situation created by the contract. *Shadbolt & B. I. Co. v. Topliff,* 85 Wis. 513, 55 N. W. 854; *McCall Co. v. Icks,* 107 Wis. 232, 83 N. W. 300; *Excelsior W. Co. v. Messinger,* 116 Wis. 549, 555, 93 N. W. 459. Plaintiff therefore bound itself to be defendants' exclusive agent within the territory named, which, by the way, included the entire territory in which defendants' product could be advantageously sold, and to perform the duties resulting from such agency. Exactly what those duties were we need not attempt to catalogue. They at least included good faith and due diligence in bringing defendants' stones to the notice of possible consumers for purpose of sale to them. Such duties are shown to have been performed to the extent of the expenditure of much time and considerable money. Hence there was an obligation assumed by plaintiff sufficient to give mutuality to the agreement that it should be exclusive agent, and that defendants should neither quote prices nor make sales of its stone to others. *Mueller v. Bethesda M. S. Co.* 88 Mich. 390, 50 N. W. 319; *Russell v. Horn, B. & F. Mfg. Co.* 41 Neb.

567, 59 N. W. 901. We need not at this stage of the discussion decide whether the surrounding circumstances were such as to warrant a conclusion that plaintiff should take or defendants should supply stone to any ascertainable amount—whether all the product of the quarry or all that plaintiff by due diligence might be able to sell. The breaches of this contract necessary to be considered consist in sales of stone by defendants to others than plaintiff. We proceed to consider them.

1. Defendants sold to the Chicago, Milwaukee & St. Paul Railway 2,200 square yards of paving stone, which plaintiff had offered to sell and would otherwise have sold at a profit above the contract price of $88. Such facts are undisputed, the only excuse offered being the asserted consent by plaintiff. That is negatived by a finding for which we find sufficient supporting evidence. We see no escape from the conclusion reached by the trial court that defendants are liable for that sum. The sale by them was in breach of their express agreement, and the damage to the plaintiff was the direct and natural result.

2. A similar sale of 1,050 square yards was made to the same party, for which the trial court awarded damages in the sum of $52.20. We agree with the finding that such breach was committed, but plaintiff's secretary testifies that he offered to make the same sale at $1.11 per square yard, and would have made it if defendants had not. That price is the same as the contract required plaintiff to pay; hence obviously there could have been no damage to it from failure to make the sale. This item cannot be allowed.

3. Defendants sold a small quantity of stone to one Kelly, which otherwise plaintiff could have sold at an established market price so as to yield it a profit of $143.34. We discover no evidence to warrant disturbance of the trial court's findings to the foregoing effect. The conclusion of defendants' liability for the gains so prevented is obviously correct.

4. Another item of damage allowed plaintiff was $2,407.81 for profits it would have made on approximately 7,500 square yards of stone, that amount having been sold direct by defendants to Gaffney & Long or the Gaffney & Long Construction Company in Chicago, between May 13 and December 31, 1899. The fact of the sales was undisputed, and the margin of profit which plaintiff would have made as found by the trial court was sustained by the evidence. The defense was a written consent given by plaintiff on February 8, 1899, in following words:

"February 8, 1899.

"*Wm. Bannerman, Esq.,*
    "*Supt. of Berlin Quarry Co.,*
        "*Berlin, Wis.*

"In consideration of certain conditions, we hereby agree to allow the Berlin Granite Co. the privilege of selling to Messrs. Gaffney & Long, contractors, of Chicago, Ill., four thousand (4,000) yards of smooth blocks, six inches deep, and between (3,000) and (4,000) three and four thousand yards of common blocks, this on old deals pending. But the price to Gaffney & Long shall not be less than $1.90 per yd. f. o. b. Chicago for 6-inch smooth, and $1.12½ f. o. b. cars Berlin, Wis., for the common block.

"W. G. Taylor Co.

"L. H. Taylor, Secy."

It was in proof that this consent was granted upon the understanding and representation that Gaffney & Long had worked up certain prospective private jobs of paving, as distinguished from the ordinary contracts let by the city on open competition, and that they held an unexpired contract with defendants for stone. The court below held that the evidence of the circumstances and purpose of this contract required a construction limiting the permitted sales to meet such purposes. We feel constrained to concur with this view. Hence such sales as were outside of this consent so construed were as much in breach of plaintiff's contract as any of those already considered. When, however, we come to examine the

evidence, we find none at all to show that any of the stone sold to Gaffney & Long, either under that name or under the name of Gaffney & Long Construction Company, in which they continued business, were shipped or used for other than such private jobs, except as to that used under publicly let contracts for paving Desplaines street from Madison street to Van Buren street, and for Twelfth street from Canal street to Halsted street. All the rest may have been for the very purpose covered by plaintiff's consent, and it is undisputed that defendants sold it in good faith believing that to be the case. We cannot escape the conclusion that plaintiff has failed to prove any breach of the contract in this connection except to the extent of the stone for the two public contracts above mentioned, upon which the profits at the rates adopted by the court would have aggregated only $1,749.99. As a result, we must hold that $657.82 of this item was erroneous.

5. Another element of damage rests upon failure to perform a distinct contract by defendants to sell 15,000 square yards of paving stone to plaintiff to fill a contract for the same amount which it had made to sell and deliver to the Milwaukee Electric Railway & Light Company. Plaintiff having communicated such contract to defendants in April, 1899, and ordered the stone to fill it, they accepted the order, and shipped from time to time about half the quantity. In January, 1900, they refused to ship more, on the ground that plaintiff had failed to pay some $600 then due for stone previously shipped. They thereupon informed the street railway company that they would not deliver any more on plaintiff's contract, but, if that contract were canceled, would themselves deal directly with the street railway company and supply what it needed. Plaintiff was unable to obtain stone elsewhere to deliver upon its contract, and the street railway company therefore canceled it, so that plaintiff lost the profits it would have made on the remainder of the 15,000 square yards. Plaintiff's reason for not paying the $600 for stone

shipped was its claim that defendants were indebted to it in
a still larger amount upon an accounting of profits upon their
sales in breach of their contract, which claim it now appears
was well founded.   The findings of the trial court to sub-
stantially the foregoing effect are not antagonized to any clear
preponderance of evidence, although there is much dispute as
to some of them.   The conclusion of liability for the profits
lost, namely, the difference between defendants' price to
plaintiff plus expenses of delivery and the selling price to the
street railway company, is, of course, irresistible.

6.  The next item of damage allowed is $684, the profits
plaintiff would have made on 1,800 square yards of stone
which it had opportunity to sell to one Kelley, but was un-
able to because defendants rejected its order therefor, made
October 26th, for delivery November 15th.   In order to sus-
tain this item of damage the court must have held that the
contract not only forbade defendants from selling stone to
others, but also required them to sell to plaintiff all that it
should order for actual sales made by it, at least up to the
output of defendants' quarry; otherwise there was no breach
in refusing to accept this order.   We shall not deem it neces-
sary to resolve this somewhat doubtful question.   Conceding,
*arguendo,* such construction, it is entirely obvious that the
defendants did not agree to sell plaintiff anything except the
output of their quarry as ordinarily operated with reason-
able diligence.   The latter could therefore suffer no more
loss than the profits to result from a resale by it of all that
stone.   If defendants had sold it all to some one else, and
plaintiff had also taken orders sufficient to absorb it all, it
could not recover difference between contract and market
price upon that sold by defendants, and in addition recover
difference between contract price and sale price on that for
which the plaintiff had taken orders.   That would obviously
be duplication of the damages actually suffered.   Now, while
the trial court has found that defendants could have produced

the stone to fill this order for Kelley after October 26th, and while that finding is perhaps supported by some evidence, it is perfectly clear that they could not have produced stone to fill that order, and also those accepted by themselves, on which they have already been charged with damages. The late deliveries to the Gaffney & Long Construction Company, and the required deliveries to the street railway company which they did not make, but on which they have been charged for loss of profits, would by the clearest evidence have more than exhausted all they could produce within the contract term. The order taken from Kelley only serves to prove that plaintiff could have sold so much of the stone that defendants disposed of elsewhere. When, however, it receives the profits it could have made on that stone, it is fully compensated. We hold, therefore, that this item of damage was not recoverable in addition to the other allowances.

The result of the foregoing is that the trial court erroneously allowed $1,394.32 of damages, which, with interest from commencement of suit, July 7, 1900, to date of findings, January 10, 1903, has entered into the judgment, which therefore is improperly swollen to the extent of $1,597.39.

*By the Court.*—The judgment is modified by reducing the damages therein awarded to $2,210.49, and the total to $2,487.14, and as so modified is affirmed; appellants to recover costs in this court.