LITTLE ROCK SURGICAL CO., APPELLANT, v. SALLIE DAVIS BOWERS ET AL., RESPONDENTS.—42 S. W. (2d) 367.

Kansas City Court of Appeals.   June 15, 1931.

*Gossett, Ellis, Dietrich & Tyler* for appellant.

*P. E. Reeder, David R. Derge* and *Winger, Reeder, Barker, Gumbiner & Hazard* for respondents.

CAMPBELL, C.—Plaintiff, an assignee of a contract executed in June, 1928, by Sallie Davis Bowers and John E. Bowers, her husband, therein called the sellers, and M. P. Springer, doing business as the Little Rock Surgical Company, of Little Rock, Arkansas, plaintiff's assignor, therein called the buyer, brought suit in two counts, the first of which is to recover damages for an alleged breach of said contract, the second for injunctive relief to prevent further breaches thereof. The defendant, Physicians Supply Company, is impleaded upon the theory that it, with full knowledge of the contract and of plaintiff's rights therein, is actively engaged in aiding and assisting said sellers in violating the contract.

Upon trial, the court sustained a demurrer to the first count of plaintiff's petition, found the issues for the defendant, and dismissed the second count. Plaintiff has appealed.

The court below found that the contract was invalid for the following reasons: (1) That the consideration moving from the plaintiff to the defendant is inadequate, indefinite and not substantial; (2) that the contract is void for want of mutuality; (3) that the terms of the contract are uncertain and not susceptible of determination.

It is recited in the contract that letters patent had been issued to Sallie Davis Bowers for an invention called elbowcuffs, and that she is manufacturing and producing said invention, and that the buyer is desirous of acquiring the sole and exclusive right to sell and market said invention; that the parties agree that the sellers grant and convey to the buyer the sole and exclusive right to sell the article throughout the United States, Canada and Great Britain, and that they will not sell or cause said devise to be sold within said territory except through the buyer, and that they will refer all inquiries concerning the same to him; that they, at their own expense, will manufacture, pack and deliver said article to the buyer at Little Rock, Arkansas, ready for distribution to the consumer, and in sufficient quantities to promptly fill all orders made upon them by the buyer; that they will promptly, as far as they are able, furnish the buyer with such quantities of said articles as the buyer may require and will hold the buyers harmless from all liability for infringement of rights and patents held by other corporations or individuals. The buyer, in consideration thereof, agreed to expand for advertising the article to the trade in said territory during the remainder of the year in which the contract was made, a sum not less than one hundred dollars and the sum of four and one-half cents for each set of said articles sold and delivered by the buyer during each year thereafter; that the buyer should have the sole and exclusive right to select, determine and fix the manner, form and method that such advertising shall assume, and the publications in which the same shall appear, and shall, at the

beginning of each calendar year, render to the sellers an accurate itemized statement showing the expenditures for such advertisement; that the buyer shall furnish the shipping containers necessary for use in shipping said article and reimburse the sellers for actual cost of postage or express; that the buyer shall pay the sellers the sum of one dollar for each set of said articles so sold and delivered to the buyer; that the buyer shall have the exclusive right to fix and determine the price at which article may be resold; that the buyer shall use its best effort in the promotion and sale of said product in the designated territory through its agents, representatives, correspondents and other methods at its command, to promote and increase the sale of said product, and to maintain a minimum stock of approximately four dozen sets thereof at all times during the term of the agreement. It is provided that the agreement shall remain in force during the life of the letters patent, and that it shall be binding upon the parties thereto, their representatives, successors and assigns.

It is shown that the letters patent were issued to the defendant, Sallie D'avis Bowers, in April, 1923. Evidently her effort to put the invention on the market had not met with success, and she therefore, in June, 1925, entered into a contract with Exschell-Davis Company, in form the same as the one in suit. That company was succeeded by the Southwest Surgical Supply Company which assumed the contract. The last named company was dissolved.

After the making of the contract in suit, plaintiff was organized as a corporation under the laws of Arkaknsas, and the said buyer assigned the contract to it. M. P. Springer who signed the contract in question was the principal stockholder in both of the last named companies. Plaintiff immediately entered upon the performance of the contract, extensively advertised the article and expended therefor a sum materially in excess of the minimum agreed upon. From July 30, 1928, to December 5 of that year, it purchased the product and paid the sellers therefor the sum of $582.94. The evidence is abundant that plaintiff performed its part of the contract, in both letter and spirit.

On February 1, 1929, the sellers caused a letter to be written to plaintiff saying, "this is to advise you that on account of said breaches thereof (the contract) on your part, Mr. and Mrs. Bowers are cancelling the same."

It is worthy of note that said defendants did not claim the right to cancel the contract for any of the reasons assigned by the court in refusing the relief sought. Also, the said sellers have made three contracts, the provisions of which are substantially the same, and they now join their codefendant in claiming that the second contract is void

for uncertainty, lacks mutuality, and at the same time assert, at least impliedly, that the third contract is valid.

In this respect the story as to why Mrs. Bowers attempted to cancel the contract is told in her letter to the plaintiff, under date of November 27, 1928, in which she said there was a company in Philadelphia which wanted to buy the article but objected to buying it from plaintiff, and asked if she could sell direct to that company.

"While we appreciate what you have done and have no complaint to make in any way, we feel that we made a great mistake in giving any one company exclusive sales rights for the whole world. We feel that our contract with you limits our output by thousands of sets yearly, as the territory is too large to be supplied by one company. Also as we have spent so much time and energy in this work, we feel that it is just and right that we be allowed to promote sales whenever possible.

"Thanking you for your good work in building up our business, and wishing you success. . . ."

Plaintiff declined to grant the request and asked that inquiries about the article be referred to it. Plaintiff continued to make effort to sell the article, and made several requisitions for shipment, some of which were not filled.

In June, 1929, the sellers entered into a contract in writing with their codefendant, the terms of which are substantially the same as those in the contract in suit. The manager of said codefendant testified that before that contract was made, it had been purchasing the article from plaintiff; that plaintiff had inquired if it wanted "to buy the contract . . . received an overture from this plaintiff to sell its rights" to it as a named price, and was advised by plaintiff that it intended to take the invention to Arkansas. It is clear said defendant knew of plaintiff's rights in the invention.

Evidence was introduced tending to show the mutual intention of the parties and the circumstances under which the contract was made.

Upon the record we do not find the contract is uncertain or indefinite. The fact that the number of articles which were to be marketed was not definitely stated, does not create an uncertainty within the meaning of the law. It was contemplated by the parties that the demand which plaintiff was obligated to use its best effort to create, would be supplied.

It is argued that plaintiff could comply with the terms of the contract "by purchasing four dozen sets . . . and then do nothing more." The argument does not take into consideration the provision that plaintiff was obligated to use its best effort. Had plaintiff failed to use its best endeavor to create a demand for the invention, such failure would have been a breach of the contract.

It is argued that the contract is unfair and the consideration inadequate. It may be that Mrs. Bowers made a "great mistake" in entering into the contract, but the wisdom or the want thereof was for the parties, and not for the courts.

Consideration is an essential element, absent which the law will not uphold the contract. But a promise is a sufficient consideration for a promise. Inconvenience or damage to the promisee is also a sufficient consideration. [Underwood Typewriter Company v. Century Realty Company, 220 Mo. 552, 530, 119 S. W. 400, 13 C. J. 330.]

The claim that the contract is unilateral is the chief contention of the defendants. Mutuality of obligation is present when one of the contracting parties agrees to do one thing and the other some other thing. [13 C. J. 331, 333.]

The contract, by its terms, grants and conveys to the buyer the sole and exclusive right to sell the article throughout the named territory. That right is a valuable one. The buyer agreed to expend, during the remainder of the year in which the contract was made, a sum not less than one hundred dollars in advertising the invention, and to use "its best efforts in the promotion and sale of said product" and to maintain a minimum stock of approximately four dozen sets thereof. The sellers bound themselves, as shown by the record, to sell and deliver to the buyer such quantity of the product as was necessary to supply the demand which the buyer could, by its best endeavor, create.

In the case of Warren v. Ray Coal Company, 200 Mo. App. 442, 207 S. W. 883, this court considered a contract in which the plaintiff had agreed "to use its best endeavors to sell the output of said first party's mine." The defendant refused to perform, and defended upon the theory that the contract was unilateral because the plaintiff had not obligated himself to sell the entire output of defendant's mine. The contention was disallowed upon the theory that plaintiff was obligated to use his best endeavor to do so. "There may be a valid obligation to try to do a thing as well as to succeed in doing it."

Defendants rely mainly upon the case of Hudson v. Browning, 264 S. W. 393. The distinction between the contract there considered and the one involved in the Warren case is clearly pointed out in the opinion in the latter case and inasmuch as the contract in suit is in legal effect the same as the contract in the Warren case, we need not pursue the matter further. Clearly contract is not unilateral.

There is another reason why the judgment below cannot be sustained. It was shown without dispute that plaintiff had expended both time and money in endeavoring to create a demand for the article; that it had purchased from Mrs. Bowers many sets of the

device and paid therefor; and even if the contract was unilateral in its inception, it was bilateral at the time Mrs. Bowers attempted to repudiate it. [Loud v. Union Trust Company, 313 Mo. 552, 664, 281 S. W. 744.]

It is claimed the contract was not assignable. It is recited in the contract that it shall be binding upon the parties thereto, their representatives, successors and assigns. The right to assign is therefore provided in the contract. [5 C. J. 875.]

Under the holdings of the Supreme Court and of this court, it is obvious plaintiff is entitled to injunctive relief. [Nokol Company v.,Becker, 318 Mo. 292, 300 S. W. 1108; Warren case, supra.]

The record is such that we would not be justified in determining the amount plaintiff is entitled to recover under the first count of the petition, and we will therefore remand the cause. The judgment is reversed and the cause remanded. The commissioner so recommends. *Boyer, C.,* concurs.

PER CURIAM:—The foregoing opinion by CAMPBELL, C., is adopted as the opinion of the court. The judgment is reversed and the cause remanded. All concur, except *Trimble, P. J.,* absent.