## No. 14,476.

### BAUM *v.* ROCK ET AL.
(108 P. [2d] 230)

Decided October 7, 1940.   Rehearing denied December 2, 1940.

Mr. BERNARD J. SEEMAN, Mr. JOHN E. GORSUCH, for plaintiff in error.

Messrs. BARTELS, BLOOD & BANCROFT, for defendants in error.

*In Department.*

MR. JUSTICE KNOUS delivered the opinion of the court.

WE shall refer to the parties by name or as plaintiff and defendants, their relative positions here being the same as in the trial court. By his complaint plaintiff sought damages for breach of contract alleged to have resulted from the refusal of defendants to renew the same for an additional five years. Defendants demurred to the complaint for insufficiency of facts to constitute a cause of action. Their demurrer was sustained, plaintiff elected to stand and judgment of dismissal followed. To review such judgment plaintiff prosecutes this proceeding in error. In the lower court, in support of the demurrer, defendants argued that the alleged breach was not actionable, first, because the executory provision for renewal was indefinite and uncertain; and, second, because the alleged contract as a whole was void

for lack of mutuality. The district court sustained the demurrer on the ground first mentioned.

The complaint alleged that on February 18, 1933, defendant Mur-Zel Corp., a corporation, entered into the contract and the supplement thereto involved herein with Beauty Products, Inc.; that thereafter Beauty Products assigned said contract to plaintiff, and that defendant Murray Rock is the successor in interest to the Mur-Zel Corp. thereunder. As furnishing additional support for upholding their demurrer, defendants here urge, as a third basis, that the agreement was not assignable to the plaintiff as a result of which he is without right to enforce the executory provision for a renewal.

The complaint further asserts that at the time the contract was executed, Mur-Zel Corp. was the owner of a formula, copyright and trademark "Glo-Rnz" and of "Glo-Re Hair Rinse," which said products were manufactured by it but had not been generally distributed, introduced or marketed by said defendants in the United States of America or in Canada. Allegedly for the purpose of promoting sales the contract gave Beauty Products, Inc. the exclusive general distribution of said products in the United States and in Canada for a period of five years from February 18, 1933. Subdivision (f), paragraph 5 of the contract, around which the controversy centers, reads as follows: "(f) If party of the second part complies with the requirements of subdivision (e) above, by taking the minimum requirements each year, then this contract will be renewed for an additional five (5) years, subject to such minimum annual purchases as may be agreed upon by both parties hereto." Subdivision (e), paragraph 5, to which the reference is made, provides: "(e) During the life of this contract it is agreed between the parties that the party of the second part [*plaintiff's assignor*] will purchase the following minimum number of cartons of said product * * *, to wit: Two thousand (2000) cartons during the first year of this contract; ten thousand

(10,000) cartons during the second year of this contract, fifteen thousand (15,000) cartons during the third year of this contract; twenty-five thousand (25,000) cartons during the fourth year of this contract, and forty thousand (40,000) cartons during the fifth year of this contract; provided, however, that if the party of the second part does not purchase the above minimum requirements any one year that this contract can be cancelled and both parties relieved of any liability hereunder and no other penalty shall be incurred by party of the second part for its failure to purchase the minimum requirements."

The complaint further recites that during the period from February 18, 1933, to February 18, 1938, plaintiff and his assignor had complied with every term and provision of the contract, including the purchase of annual minimum requirements, and had expended approximately $100,000 in promoting the product of defendants and establishing a market for the same, relying upon the provisions of the contract that it would.be renewed for an additional term of five years from February 18, 1938. It then was alleged that notwithstanding such full compliance: that on or about the 18th day of February, 1938, defendants did "cancel said contract and * * * refuse to renew or extend said contract in conformity with the terms of said agreement, or otherwise, and defendants notified this plaintiff, on or about March 9, 1938, through their attorneys, that said contract was at an end and of no further force and effect."

█ As a basis for the first ground of demurrer defendants argue that subdivision (f) of paragraph 5, is unenforceable for uncertainty and indefiniteness, in that by its terms the amount of the minimum annual purchases for the renewal term was reserved for future determination by the parties. The principle relied upon is well stated in 1 Williston on Contracts (rev. ed.) section 45, as follows: "Although a promise may be sufficiently definite when it contains an option given to

the promisor or promisee, yet if an essential element is reserved for the future agreement of both parties, the promise can give rise to no legal obligation until such future agreement. Since either party by the very terms of the promise may refuse to agree to anything to which the other party will agree, it is impossible for the law to affix any obligation to such a promise." See, also, Restatement of the Law—Contracts, §32; *Cohen v. Clayton Coal Co.,* 86 Colo. 270, 281 Pac. 111; *McAllister Co. v. Eldora Co.,* 51 Colo. 91, 116 Pac. 1038.

If subdivision (f) of paragraph 5, of the contract, be considered as standing alone it might well be concluded that it was within the ban of the rule, and apparently the trial court adopted this premise in making its ruling; however, as well established as the general proposition, is the corollary that a promise is not so indefinite as to be unenforceable if it can be made certain by reference to extrinsic matters. 1 Williston on Contracts (rev. ed.) §47; Restatement of the Law—Contracts, §32. See, also, *Bechmann v. Taylor,* 80 Colo. 68, 249 Pac. 262. The general rule also is inapplicable if a method of settlement is provided by the contract itself. *Greater Service Homebuilders Ass'n v. Albright,* 88 Colo. 146, 293 Pac. 345; *Schneider v. Hildenbrand & Co.,* 14 Tex. Civ. App. 34, 36 S.W. 784. We think certainty is supplied to the renewal provision by paragraph B of the supplemental agreement entered into between Mur-Zel Corp. and Beauty Products, Inc., under the same date the principal contract was signed. Said paragraph is as follows: "Referring to sub-division (e) of paragraph (5), it is hereby further agreed that should the said parties to this contract be unable to agree to the amount of such minimum annual purchases, said disagreement is to be submitted to a board of arbitration, consisting of one party appointed by each of the parties hereto and the two so selected to select a third. The decision of this board of arbitration is to be binding upon both parties hereto."

■ We base our discussion on the premise that the contract itself was binding, as later we shall demonstrate, and that under subdivision (f) the only condition to its renewal was the purchasing by the plaintiff of the minimum requirements each year during the primary term. In passing on the demurrer performance in this respect, having been pleaded, must be assumed. The condition having been fulfilled, to make the contract definite and certain for the renewal period it only remained for the parties to agree upon new specifications for the minimum annual purchases during the extended term, which in effect would be included in subdivision (e) for the extended term in lieu of those prescribed for the original period. No other modification of the original contract upon renewal is suggested by the terms of subdivision (f). Such being the situation, if the parties were unable to agree upon the quantity of the minimum annual purchases, through refusal to so attempt or otherwise, the terms of paragraph B of the continuing supplemental agreement immediately became operative and provided a method for determining the extent thereof with certainty and definiteness. That said paragraph B must have been included in the supplemental agreement in contemplation of a possible disagreement between the parties as to the amount of the minimum annual purchases upon renewal, is disclosed by the otherwise unexplainable circumstance that subdivision (e), as it appears in the original contract, and to which paragraph B expressly pertains, *is definitely specific and precisely certain* as to the amounts of the minimum annual purchases, and it is hardly conceivable that controversy could have arisen thereunder with respect to the required total thereof in any given year of the original term.

■ As the second argument in support of their demurrer, defendants assert that the entire contract lacks mutuality and does not contain a single enforceable liability, obligation or promise of Beauty Products, Inc.

It is elementary that an agreement deficient in the respect alleged may not be enforced. *Radetsky v. Palmer,* 70 Colo. 146, 199 Pac. 490; *Denver Company v. LeFevre,* 25 Colo. App. 304, 138 Pac. 434; Restatement of the Law —Contracts, §79. Under the terms of the agreement, and according to the allegations of the complaint, and as a contractual consideration, Beauty Products, Inc. paid Mur-Zel Corp. $10.00 and agreed to and did take at once, 1,000 cartons of Glo-Rnz at $1.20 a carton. Beauty Products, Inc. further obligated itself to carry on an active sales promotion campaign for the general distribution of Glo-Rnz, including advertising in national professional periodicals, and distribution of booklets and display cards; to purchase during each year of the contract the minimum number of cartons of the product specified in paragraph 5 (e), and pay therefor seventy-two cents a carton. Defendants contend that the promise of Beauty Products, Inc. to make specific annual purchases at an agreed price (subdivision [e] paragraph 5), which they concede otherwise would import mutuality to the contract, is completely nullified by the last clause of said subdivision. They argue that under this clause plaintiff might desist from buying for an entire year and thereby be relieved of all liability under the contract. We do not believe this argument sound. It is not stated in such proviso, which is above quoted, that if the plaintiff did not purchase the minimum requirements for any one year the contract then should terminate, but merely recites that on such contingency it might *"be cancelled."* Obviously cancellation would require affirmative action by some one and the terms clearly import such option would rest with defendants, the parties aggrieved by the breach.

Release of the liability of the parties and the concluding provision that, "no other penalty shall be incurred by party of the second part [plaintiff] for its failure to purchase the minimum requirements," thus only would become operative if and when defendants elected to

cancel. In other words, if in any year plaintiff failed to make the minimum annual purchases defendants were given the option to cancel the contract. If they elected to cancel, the parties would be relieved of further liability under the contract and plaintiff could not be penalized further for its failure to make the minimum annual purchases. If, however, after breach, defendants elected not to cancel and did not, the contractual obligations of both would continue and each might proceed as it deemed advisable. Cancellation by defendants, not plaintiff's violation alone, only could terminate the contract; hence, it would seem certain that under the terms of paragraph 5, subdivision (e), plaintiff could not escape liability under the contract by merely desisting from making the annual purchases prescribed thereby. The circumstance that plaintiff thus could not terminate the contract during its term without liability, renders inapplicable the doctrine announced in *Du Pont De Nemours & Co. v. Clairborne-Reno Co.*, 64 F. (2d) 224, 89 A.L.R. 238, cited by defendants, wherein it was held that a distributor under a sales agency contract which was to continue so long as his services should prove satisfactory, may not recover damages for its termination where he could himself terminate the contract at any time without incurring liability therefor.

█ It may be observed further that in many cases involving sales agency contracts, somewhat similar to the one before us, it has been held that a cash consideration, although nominal, purchases by the agent of the product involved, together with reciprocal promises in various combinations to carry on an active sales and advertising campaign to increase the volume of purchases of such commodities, provides ample consideration and that mutuality attains so as to make enforceable the executory obligations of the agent. See, *Marrinan Medical Supply Co. v. Ft. Dodge Serum Co.*, 47 F. (2d) 458; *Buerry's Sons Co. v. Monark Gasoline & Oil Co.*, 32 F. (2d) 74; *Meier Dental Mfg. Co. v. Smith*, 237

Fed. 563; *Nathan Elson & Co. v. Beseline & Son,* 116 Neb. 729, 218 N.W. 753; *Bendix v. Staver Carriage Co.,* 174 Ill. App. 589; *Wood v. Lady Duff Gordon,* 222 N.Y. 88, 118 N.E. 214, and *Taylor Co. v. Bannerman,* 120 Wis. 189, 97 N.W. 918.

We are of the opinion that defendants' contention that the agreement was not assignable is without merit. The last numbered paragraph of the contract provides, "This contract shall be mutually binding upon the parties hereto, their successors and assigns." The courts generally have held that a contract which otherwise might not be assignable, is made so by the insertion therein of a provision binding the assigns of the parties. We follow this rule. *Alden v. Frank Imp. Co.* (Neb.), 77 N.W. 369; *Little Rock Surgical Co. v. Bowers,* 227 Mo. App. 744, 42 S.W. (2d) 367; *National Linen Service Corp. v. Clower,* 179 Ga. 136, 175 S.E. 460; *Diamond Match Co. v. Roeber,* 106 N.Y. 473, 13 N.E. 419. See, also, 1 Am. & Eng. Ann. Cases, p. 854; Restatement of the Law—Contracts, §162, Subdiv. (1).

In the case of *Arkansas Valley Co. v. Belden Mining Co.,* 127 U.S. 379, 8 Sup. Ct. 1308, 32 L. Ed. 246, solely relied upon by defendants upon this point, differently than here, the contract was silent on the subject of assignability and that authority is so distinguished.

The judgment is reversed and the cause remanded with directions to overrule the demurrer.

MR. CHIEF JUSTICE HILLIARD and MR. JUSTICE YOUNG concur.