No. 14,493.

NAVY GAS AND SUPPLY COMPANY *v.* SCHOECH.
(98 P. [2d] 860)

Decided January 8, 1940. Rehearing denied February 5, 1940.

Messrs. Van Cise, Robinson & Charlton, for plaintiff in error.

Mr. A. D. Quaintance, Mr. E. B. Evans, for defendant in error.

*In Department.*

Mr. Justice Knous delivered the opinion of the court.

For the purpose of brevity we shall herein refer to the parties as they appeared in the district court where defendant in error was plaintiff and the plaintiff in error was defendant. May 11, 1934, defendant, a wholesaler of gasoline and petroleum products, in a written agreement, appointed plaintiff its agent for the tank wagon area of Golden, Jefferson county, Colorado, and as his compensation promised to pay him specified commissions upon sales of such products as were made by him as its agent. In 1936 and 1937, under an agreement into which the parties duly entered June 6, 1936, as plaintiff alleges, the defendant through its authorized agent agreed to sell to the United Construction Company at the site of the Ralston Creek Dam in Jefferson county, in the construction of which it then was engaged, large quantities of gasoline, diesoline, greases and other petroleum products, upon all of which so sold and delivered defendant agreed to pay to plaintiff certain specified commissions. Upon its refusal to pay him the commissions on such sales plaintiff instituted this action. In a trial to a jury, a verdict was returned in favor of plaintiff upon which judgment was entered against defendant in the sum of $9,388.39, to review which it has brought the case here on error. The suit and recovery were for commissions at a lesser rate than fixed by the

written agency contract, by reason, as plaintiff alleged, of a supplemental agreement to that effect between him and a duly authorized officer of the defendant, made prior to the execution of the United Construction Company contract so that it might submit a low competitive bid for that business.

The trial court concluded and instructed the jury that as a matter of law, under the written agency contract, plaintiff was entitled to the commissions specified therein on all of defendant's products sold and delivered in the territory in Jefferson county allotted to plaintiff, but that, because of the oral agreement alleged by plaintiff, he was limited in his recovery to the lesser amount which he asserted defendant agreed to pay. As a major basis for reversal defendant contends that this conclusion of the trial court was erroneous.

 Whether or not an agent is entitled to commissions on goods sold by the principal within the territory specified in an agency agreement depends upon the intention of the parties and interpretation of the contract of employment. 3 C. J. S., p. 71, §179; 2 Am. Jur., p. 240, §307. "A contract to give an 'exclusive agency' to deal with specified property is ordinarily interpreted as not precluding competition by the principal personally, but only as precluding him from appointing another agent to accomplish the result." 2 Am. Jur., p. 240, §307; Restatement of the Law of Agency, §449; annotations appearing in 10 A. L. R., 816; 20 A. L. R., 1270. A large number of authorities cited by defendant are grounded upon this principle. However, on the other hand, it is well established that the grant of an "exclusive agency" to sell, i. e., the exclusive right to sell the products of a wholesale dealer in a specified territory ordinarily is interpreted as precluding competition by the principal in any form within the designated area. 2 Am. Jur., p. 240, §307; Restatement of the Law of Agency, §449; 3 C. J. S., p. 71, §179. Plaintiff contended, and the trial court held, that the relationship arising

from the contract between defendant and plaintiff was of the latter character, although the contract did not so specifically provide. An exclusive selling agency for a named territory may exist in fact although the agency contract does not designate the agency as such. *White Company v. W. P. Farley & Co.,* 219 Ky. 66, 292 S. W. 472, 52 A. L. R. 541. The use in the contract "of the words 'exclusive agency' or 'exclusive sale' is not conclusive but, as in other cases involving interpretation, all the circumstances must be considered." Restatement, Law of Agency, §449. In *White Company v. Farley & Co., supra,* the Kentucky Court of Appeals declared a sales-agency contract which assigned the agent certain territory outside of which he was not allowed to operate in the sale of the principal's merchandise, which required him to handle no merchandise except that manufactured by the principal, and allowed a bonus commission depending upon the amount of the agent's total cash sales, conferred an exclusive agency. Analogously, the contract before us requires the plaintiff to buy, sell and deliver the petroleum products of defendant to the exclusion of any and all other such products. As originally drawn it appointed and designated plaintiff as defendant's agent "for the tank wagon area of Golden, Jefferson county, Colorado." Under date of the contract, by letter, defendant advised plaintiff: "As a means of clarification, the tank wagon area of Golden, Colorado, is defined as follows: Jefferson County, with the exception of the South West corner which is now being served by the Morrison Auto Supply Company. This, * * * will clarify the situation to such an extent that there will be no misunderstanding as to the area you are to serve." By this language of limitation the amendment clearly imports that the plaintiff should not be allowed to sell defendant's products outside the sharply defined area indicated and implies exclusiveness therein. Upon the principle, approved by us in *Baird v. Baird,* 48 Colo. 506, 111 Pac. 79; *Hinkle v. Blinn,* 92 Colo. 302, 19 P.

(2d), 1038, and other similar cases, that the practical interpretation given to the contract by the parties while engaged in its performance and before any controversy has arisen, is one of the best indications of their true intent, the plaintiff, as demonstrative of the exclusive agency construction, introduced evidence to the effect that previously upon at least six occasions he was paid commission by defendant upon sales made directly by it to construction contractors and to governmental agencies in plaintiff's territory. It would appear from the testimony that with the exception of the sale to the United Construction Company and possibly one other transaction, these comprised the only direct sales made by defendant in plaintiff's territory during the period involved. In most of these cases the compensation received by plaintiff was less than the commission stipulated in the written contract and in each instance he made delivery of the products. Plaintiff testified that he agreed to these reductions because of the low competitive bids essential to secure the business and without which it could not have been obtained. Although counsel for defendant objected to the introduction of much of this evidence, they argue that these transactions were merely special agreements for delivery at compensable rates and instead of supporting the position of plaintiff indicate that he did not consider his contract gave him the exclusive right to sell in the Jefferson county territory, since in that event he would have insisted on the full contract commission. Notwithstanding this argument we believe, as did the trial court, that this evidence more logically proclaims a construction of the contract by the parties consistent with plaintiff's contentions. His consent to these transactions did not alter his status as agent. *Taylor Manufacturing Co. v. Key,* 86 Ala. 212, 5 So. 303. The preliminary conduct of the parties in the controversy involved in the proceeding before us, also may be considered as being indicative of the existence of an exclusive agency. From the record

it appears that when it was ascertained that the United Construction Company had been awarded the contract for building the Ralston Creek Dam, the sales agent of defendant—who later closed the contract with the construction company for the use of its petroleum products —to secure the good will of that company, instructed plaintiff to serve it any way he could. Upon these instructions and their own initiative plaintiff, and his son who aided him in his business, actively and extensively assisted the construction company in removing its machinery from railroad cars, made several trips to Denver for fuel for the equipment, hauled water to the railroad siding for use in tractor radiators, and made a special price for gasoline at plaintiff's filling station to the employees of the construction company. So appreciated were these efforts that the construction company, before the contract was made, mentioned these courtesies to the officers of the defendant company. During this period of negotiations, culminated by the alleged oral agreement hereinafter further mentioned, plaintiff was in frequent conference with the sales representatives of the defendant company with respect to securing the United Construction Company contract. Under the terms of the agency agreement, viewed in the light of the surrounding circumstances, as well as the manner of its interpretation by the parties, we are of the opinion that the trial court did not err in instructing the jury as it did on the legal effect of the contract. The fact that it provides that the commissions were to be paid "upon such products as are sold by second party [plaintiff]" and on gasoline and kerosene delivered by him, is not incompatible with the exclusive-agency interpretation, since if that construction is accorded, no one other than plaintiff had authority to sell or deliver defendant's products in the area. In the case before us plaintiff was precluded from doing these things by the assumption of this authority by the defendant.

We do not believe that the case of *King Powder Co.*

*v. Dillon,* 42 Colo. 316, 96 Pac. 439, principally relied upon by defendant, supports its contentions. It is true that there Dillon claimed he had an exclusive agency for the sale of the company's products in the state of Colorado and sought a commission on a sale therein made by the principal. Beyond these points of similarity the Dillon case has no factual analogy with the case at bar. There the evidence introduced by plaintiff Dillon established "the fact that plaintiff must have known at the time he entered into the contract that he did not gain thereby an exclusive agency, for the reason that during negotiations which led up to the making of the contract, he insisted that the word 'exclusive' be inserted in the contract, which was refused by the company, * * *," and the contract was so drawn. So prefaced it would seem obvious that the relationship arising under that contract could not well be declared to amount to an exclusive agency. We there merely upheld the trial court's action in granting a nonsuit as to the count of the complaint alleging exclusive agency and held that because of the insufficiency of plaintiff's evidence the same result should have attained as to the second count of the complaint asserting a claim to the commissions on the ground that plaintiff, as a nonexclusive agent, was the procuring cause of the sale. Nothing in the Dillon case inhibits plaintiff's recovery in the proceeding under consideration.

Defendant complains that by instruction No. 4 the court told the jury in effect that the oral contract for reduced commissions was established by the evidence. Counsel say that since plaintiff's version of the conversation, from which he claims the agreement arose, was denied by the sales manager of defendant, an issue of fact for resolution by the jury was raised. Because defendant's exceptions to this instruction, when given, did not mention the ground of objection now asserted, it may be doubted whether we may, with propriety, consider it. However this may be, we think the question

was appropriately submitted to the jury by the trial court. Instruction No. 1 detailed the pleadings, including plaintiff's allegation of the oral agreement and defendant's denial thereof. Instruction No. 2 advised that the burden of proof was upon the plaintiff to establish the allegations of his complaint by a preponderance of the evidence. Pertinent to the factual controversy developed by the evidence, Instruction No. 4 recited: "Plaintiff claims his oral contract was for delivery only, while defendant claims *that if such contract was made* it was for delivery and service at the dam." The defendant tendered no instruction relating to this issue and neither in its motion for nonsuit nor for a directed verdict did it challenge the sufficiency of proof of the oral agreement, but it confined its objection to the grounds that there was no consideration therefor and that it was "fully executed," neither of which points is urged here. The perspicacity of astute counsel likely accounts for this condition of the record, since the oral contract as advanced by plaintiff acted as a limitation to the compensation he otherwise might have attempted to recover under the written agency agreement.

Because of the fact that the term "diesoline" does not appear in the written agency contract, defendant contends that plaintiff was not entitled to commissions on such of this product as it sold to the United Construction Company. We infer "diesoline" is the trade name used by the Shell Petroleum Company for its diesel motor fuel. The term had not been coined when the agency agreement was made. However, it is a petroleum product and was used by the United Construction Company to operate diesel-powered tractors and equipment. The agreement provides for commissions on gasoline, distillate and *tractor fuel,* all of which are fuels for internal combustion engines, and plaintiff testified that diesoline, by name, was included in the oral agreement. It is unquestioned that in other transactions defendant had paid plaintiff commissions on the

sales of this fuel. It also is interesting to note that in the exhibit introduced by defendant covering its deliveries to the Ralston Dam diesoline items are carried in a column headed 'tr.fuel" (meaning tractor fuel), above which is written "dies." Under these circumstances we perceive no merit in defendant's contention. In harmony with this conclusion is *Wier v. American Locomotive Co.*, 215 Mass. 303, 102 N. E. 481, where under a contract to sell automobiles in exclusive territory, the court allowed an agent commissions on taxicabs upon the theory that the latter were included in the general term "automobiles."

Equally untenable is defendant's assertion that the written agency contract was not in force at the time of the United Construction Company purchases. Under the terms of that agreement plaintiff was appointed to act as defandant's agent from May 26, 1934, until May 26, 1935. The complaint alleged that the contract was in full force and effect during all times involved in this controversy. Originally by its answer defendant admitted this allegation, but later at the trial amended the admission by adding the words "as to sales and deliveries by plaintiff." According to defendant's theory such was the extent and nature of the contract during the original term and this amendment in no way limited the effect of the admission. Further, it appears from the evidence that following the named expiration date and until some time after the United Construction Company transaction, plaintiff and defendant proceeded in the same manner as under the original contract and with no changes in their relationship. Such conduct raises a presumption, rebuttable, but not rebutted herein, that their relations were governed by the terms of the expired contract. *Park Square Auto. Station v. American Locomotive Co.*, 79 N. H. 497, 111 Atl. 689.

Defendant also contends that the verdict was excessive. The court instructed the jury: "There is no dispute that $15,060.50 is the amount that the gallonage

figures at the prices stated. Plaintiff claims that his cost for delivery would be $5,752.81, while defendant claims that the cost of delivery and service would be $12,093.14. If you find by a preponderance of the evidence that the verbal contract was for delivery only your verdict should be for plaintiff for $9,388.39. If you find that it was for delivery and service your verdict should be for plaintiff for $2,967.36." The verdict returned was for $9,388.39. Defendant made no objection to this instruction upon the ground that the figures thus given the jury were erroneous or the computations incorrect. Hence, objection here on that basis is precluded. Defendant's other attacks on the verdict merely epitomize its contentions on the merits which we have hereinbefore considered and overruled.

The trial court did not err in denying defendant's motion for change of venue to the City and County of Denver where, it is undisputed, defendant maintained its principal office and residence and was served with the summons, and only wherein it alleged it was bound to perform the things required of it under the contract. Contesting the motion plaintiff alleged his residence in Jefferson county and asserted the contract was to be performed therein, and thus within the performance exception to section 29 of the Code of Civil Procedure. Defendant relies upon *Maxwell-Chamberlain Co. v. Piatt*, 65 Colo. 140, 173 Pac. 867; *People v. District Court*, 74 Colo. 121, 218 Pac. 1047, and *Lamar Co. v. Bishop*, 80 Colo. 369, 250 Pac. 689. These cases relate to instances where the sole contractual obligation of the defendants therein was to deliver or receive and pay for specific personal property at a designated city or town, the situs of their residence and the service of summons. It was determined therein that under the contracts involved defendants' place of performance was at these points and the venue of actions arising under such contracts properly was confined to those counties. As bringing the case at bar within this rule, defendant calls at-

tention to the language of the contract before us providing that it "supply" plaintiff with merchandise from defendant's Denver plant. If the contract before us was for an out and out sale and delivery of these products at Denver and no more, there might be merit to this contention; however, clearly such is not its character. It is an agency contract, and so designated, whereby as agent for defendant, plaintiff is required to sell and deliver defendant's petroleum products in the designated specific area of Jefferson county to customers of both parties therein. Within this Jefferson-county area plaintiff was required to collect the money due defendant therefor and plaintiff's commissions were remitted to him there. In that county defendant furnished plaintiff certain equipment, such as tanks, pumps and advertising signs which, as agent for defendant and at its expense, plaintiff was required to maintain and keep in repair. Plaintiff was required to furnish bond for all of the equipment and supplies which he might have in his custody as defendant's agent in Jefferson county. The commissions involved in the proceeding before us arose from sales in Jefferson county and the breach of the contract also there occurred. In the latter connection see *Grimes Co. v. Nelson*, 94 Colo. 487, 31 P. (2d) 488. It is thus certain under the performance exception contained in section 29, supra, that plaintiff's action might be maintained in that county. In none of the cases cited by defendant on this point was an agency contract involved and that such contracts were not within the contemplation of those adjudications is apparent from the opinion in the Maxwell-Chamberlain Co. case, supra, cited in the other two, where, in discussing the relationship of the parties, we said: "No agency is established and he [plaintiff] is not in any manner authorized or empowered to act for or on account of the motor company [defendant]." Comparable in principle to our disposition of this question, though arising under a different form of statute, are: *Hawbaker v. Laco Gas*

*Burner Co.,* 210 Ia. 544, 231 N. W. 347; *Kabrick v. J. I. Case Threshing Mach. Co.,* 180 Ia. 598, 163 N. W. 368; *Ockerman v. Burnham,* 63 Ia. 570, 19 N. W. 676, cited in 67 C. J., p. 35, §41.

Judgment affirmed.

MR. CHIEF JUSTICE HILLIARD and MR. JUSTICE YOUNG concur.