ALVIN C. GILBRECH, appellee, v. PETER J. KLOBERDANZ, appellant.

No. 50234.

(Reported in 107 N.W.2d 574)

Fᴇʙʀᴜᴀʀʏ 8, 1961.

Sams & Dunkelberg, of Osage, and Zastrow, Noah & Smith, of Charles City, for appellant.

Carl F. Conway, of Osage, for appellee.

GARFIELD, C. J.—Plaintiff-Gilbrech brought a law action against defendant-Kloberdanz for half the cost of fuel used in heating a building owned and occupied by them as tenants in common, half the cost of repairs to the heating plant and half the reasonable value of tending the stoker and removing the ashes. Defendant counterclaimed for half the cost of fuel oil used by him in allegedly heating the building, electricity for the common use of the parties, coal used to heat water for plaintiff, and for damages caused by plaintiff's alleged negligence in maintaining a plumbing facility in the building.

Plaintiff also brought a suit in equity asking that defendant be enjoined from interfering with plaintiff's access to the basement and rightful use of the building and from removing the coils in the furnace.

The two actions were consolidated for trial in equity. From judgment for plaintiff in the law action and decree for him in the equity action defendant has appealed.

Although our review is de novo we give weight to the trial court's decision in each case.

I. On March 1, 1947, plaintiff-Gilbrech and defendant-Kloberdanz contracted in writing to purchase a two-story and basement business building in Osage. Defendant was to occupy the ground floor for his cleaning establishment and plaintiff the second floor for the beauty shop operated by him and his wife. For about two years each had occupied his portion of the building as tenant of the previous owner. The contract provides "Each party shall share equally the fuel bill for heating said

building, shall bear the burden equally of firing the furnace * * * and hauling ashes from the building."

When the building was purchased there were two boilers in the basement—one to heat the building, the other to generate steam for defendant's cleaning purposes. About 1950 or 1951 this second boiler became useless and defendant replaced it with another in a back room on the first floor. This new boiler furnished most of the heat for the first floor although it was mainly intended to supply steam for the cleaning apparatus. Until the fall of 1955 defendant continued to pay for half the coal used in the basement boiler, and half the value of tending the stoker and removing the ashes therefrom. He then refused to make further payments. Plaintiff's law action, commenced in September 1959, seeks to recover half these items for the heating season 1958-9. As stated, recovery was allowed although the amounts claimed for tending the stoker and removing the ashes were reduced.

Defendant's counterclaim includes a claim for half of twenty per cent of the cost of fuel oil used by him in the newer·boiler on the theory that a fifth of the fuel was used to heat the lower floor of the building. Before filing his counterclaim in February 1960, defendant never asked plaintiff to pay for any part of the fuel oil. Plaintiff testified without contradiction there was little if any reduction in the coal bills for the basement furnace after defendant installed the boiler on the first floor.

It must be admitted there is a measure of injustice in requiring defendant to bear half the cost of operating the basement furnace from which plaintiff derives principal benefit. However, after giving weight to the trial court's decision we are inclined to affirm this part of the judgment in the law action on two main considerations.

In the first place, the decision accords with the practical construction the parties themselves placed on the provision of the written contract heretofore quoted. As stated, for some four to five years under the present heating arrangement, defendant without objection continued to pay half the cost of coal for the basement furnace and to share equally the burden of operating

it. Throughout this period and an additional four years he made no claim against plaintiff for any part of the cost of fuel oil used in the newer boiler.

■ The practical construction placed upon a contract of doubtful meaning by the parties themselves will usually be adopted by the courts. Darnall v. Day, 240 Iowa 665, 671, 37 N.W.2d 277, 280, and citations; Martin v. A. W. Moeller & Son, 241 Iowa 1033, 1034, 1035, 44 N.W.2d 345, 346, and citations; Navy Gas and Supply . Co. v. Schoech, 105 Colo. 374, 98 P.2d 860, 126 A. L. R. 1225, 1229.

■ II. The other reason for the conclusion stated in the previous division grows out of an earlier action brought by plaintiff in 1957 to recover half the cost of fuel used in the basement furnace and half the value of caring for it. Defendant pleaded in defense to that action by way of offset that he was providing heat for his portion of the building at a cost in excess of the amount claimed by plaintiff. On November 10, 1958, following trial of the previous action, the court rejected the defense and established plaintiff's claim as amended on October 9, 1958. No appeal was taken from the judgment.

The effect of that judgment is res judicata of plaintiff's right to recover the principal items he claims in the present law action and the insufficiency of the defense interposed thereto. Stucker v. County of Muscatine, 249 Iowa 485, 491, 87 N.W.2d 452, 456, and citations; Lynch v. Lynch, 250 Iowa 407, 94 N.W.2d 105.

Further, a substantial part of defendant's counterclaim is barred by rule 29, Rules of Civil Procedure, which provides, subject to an exception not here applicable: "A pleading must contain a counterclaim for every cause of action then matured, and not the subject of a pending action, held by the pleader against any opposing party and arising out of the transaction or occurrence that is the basis of such opposing party's claim * * *. A final judgment on the merits shall bar such a counterclaim, although not pleaded." See In re Estate of Hoelscher, 249 Iowa 444, 450, 87 N.W.2d 446, 450; Mensing v. Sturgeon, 250 Iowa 918, 926, 97 N.W.2d 145, 147.

III. Defendant's counterclaim seeks $91 damage caused

by leakage of water to the first floor from the tank connected with plaintiff's second-floor toilet. This occurred in 1959, after the previous action was disposed of. Clearly this part of the counterclaim is not barred by the judgment in that action. The water leakage came from a crack which suddenly appeared in the toilet tank. There is no pleading or evidence of any specific negligence of plaintiff in this occurrence. Defendant relies on the doctrine of res ipsa loquitur. The trial court held the doctrine inapplicable and denied the claim.

Under the doctrine referred to where (1) injury is caused by an instrumentality under the exclusive control of a defendant (plaintiff here), and (2) the occurrence is such as in the ordinary course of things would not happen if reasonable care had been used, the happening of the injury permits but does not compel an inference that defendant (plaintiff here) was negligent. Thompson v. Burke Engineering Sales Co., 252 Iowa 146, 148, 106 N.W.2d 351, 353, and citations.

There is no question the toilet tank was in plaintiff's exclusive control. And we are inclined to the view the occurrence was such as in the ordinary course of things would not happen if reasonable care had been used. We think, therefore, the res ipsa doctrine is applicable. At least it may be so assumed. But it does not follow defendant is entitled to recover on this claim. Existence of the two foundation facts, as they are often called, permits but does not compel an inference of negligence. We think any inference of negligence from application of the res ipsa rule has been rebutted.

The undisputed evidence is that plaintiff's first knowledge of any defect in the toilet tank came when defendant telephoned him about the leakage between 6:30 and 7 the morning defendant discovered it. Plaintiff had been there earlier that morning "and everything was okay." Apparently the crack in the tank and the leak therefrom appeared between the time he was first there and the time of defendant's telephone call. Plaintiff does not know what caused the crack in the tank.

We do not hold the evidence is sufficient to rebut, as a matter of law, an inference of negligence which application of the res ipsa doctrine permits. If trial had been to a jury the

question whether such an inference arose and, if so, whether it was rebutted would be facts for jury determination. Although this is a law action it was, as stated, tried in equity. This was pursuant to agreement of parties and order of court. Our review is therefore de novo. Laughlin v. Franc, 247 Iowa 345, 347, 73 N.W.2d 750, 752, and citations. We review the facts as well as the law and draw what we think are proper conclusions therefrom. And, as indicated, we feel the evidence sufficiently rebuts any inference of negligence which the res ipsa rule permits. The fact the trial court did not pass upon this point does not call for a reversal.

█ What is said above disposes of defendant's claims of error in the trial court's decision in the law action. We need not dwell upon its disposition of issues in that action other than those we have discussed. Other possible errors or propositions are not argued and are therefore deemed waived. Rule 344(a) (4) (Third); Ver Steegh v. Flaugh, 251 Iowa 1011, 1026, 103 N.W.2d 718, 727, and citations.

█ IV. We consider now the equity suit to enjoin defendant. The only access plaintiff has to the basement, where the furnace and his water softener are, is through the front entrance to the first floor. In the summer of 1959 defendant put a new lock on that door and did not furnish plaintiff a key to it. Defendant told plaintiff he could go to the basement only when the cleaning establishment is open or when he contacted one of defendant's employees. Plaintiff's beauty shop is open longer hours than is defendant's business. Defendant threatened plaintiff with physical harm, caused plaintiff concern for his own safety, in some respects harassed and impeded him in going to the basement to care for the furnace, and threatened to remove the water coils from the furnace.

The trial court enjoined defendant from interfering with plaintiff's access to the basement and his lawful use of the premises, from using a lock on the front door without furnishing plaintiff a key to it, and from removing the coils to the basement furnace. In other respects injunctive relief was denied.

Defendant argues the injunction is unnecessary although

he admits there was some trouble between the parties and some language to the effect violence might be used. We think the evidence warrants the injunction and it is proper.

Plaintiff is an owner in common of the building. His ownership carries with it the rights with which defendant interfered and threatens further interference. The injunction merely protects plaintiff in the enjoyment of those rights. 28 Am. Jur., Injunctions, section 28, page 519, states this applicable rule:

"Whatever invades a man's right of dominion over his property is a legal injury, whether damage ensues or not. It is a right for the violation of which the law imports damage, and courts of equity will interpose in a proper case to protect the right, without any reference to the question of actual damage; a showing of specific money damage is not necessary to support an injunction."

Plaintiff is not only an owner in common of the building. He and his wife conduct a lawful business therein. They are entitled to do so without obstruction or interference from acts committed by defendant without just cause or excuse. 43 C. J. S., Injunctions, section 138a, pages 683, 684.

Granting or refusing an injunction rests largely in the sound, judicial discretion of the trial court under the facts of the particular case and we are somewhat reluctant to interfere with its decision. Amdor v. Cooney, 241 Iowa 777, 783, 43 N.W.2d 136, 140, and citations; 43 C. J. S., Injunctions, section 14. No abuse of discretion appears here.

It is unnecessary to determine whether defendant's obstruction to plaintiff's free access to the basement and free use of the property constitutes a nuisance. However we may observe that section 657.1, Code, 1958, provides: "Whatever is * * * an obstruction to the free use of property, so as essentially to interfere with the comfortable enjoyment of life or property, is a nuisance, and a civil action * * * may be brought to enjoin and abate the same * * *."

A rule similar to this statute, announced in many decisions, is that one must so use his own property as not to interfere unreasonably with his neighbor's comfortable and rea-

sonable enjoyment of his property. Amdor v. Cooney, supra, 241 Iowa 777, 783, 43 N.W.2d 136, 141, and citations.

The judgment and decree appealed from are—Affirmed.

All JUSTICES concur except BLISS, J., who takes no part.