## No. 19,909.

## WILLIAM R. WATSON *v.* CHARLES V. SETTLEMEYER D/B/A SETTLEMEYER DISTRIBUTING COMPANY.

(372 P. [2d] 453)

Decided June 18, 1962.

Messrs. GRANT, SHAFROTH, TOLL & MCHENDRIE, for plaintiff in error.

Mr. PHILIP J. CAROSELL, Mr. ABE L. HOFFMAN, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE SUTTON.

ON December 23, 1955, in Colorado, Settlemeyer sued Watson and two State of Washington corporations, the Bardahl Manufacturing Corporation and its sales agent the Bardahl Oil Company, for alleged conspiracy to breach an oral distributorship contract for the State of Colorado, which was granted in 1950 by the Bardahl Manufacturing Corporation to Settlemeyer. Actual damages in the amount of $42,529.68 and exemplary damages in the sum of $10,000.00 were sought. Watson, who was Bardahl's New Mexico distributor, replaced Settlemeyer in Colorado as distributor under a written contract dated July 1, 1955, though Settlemeyer was not notified of his dismissal until mid-July 1955.

Settlemeyer's attempts to procure service of process on the two Bardahl corporations have proved fruitless [see: *Bardahl Manufacturing Corporation et al. v. District Court of Jefferson County, et al.,* 134 Colo. 112, 300 P. (2d) 524 (1956) and *Bardahl Manufacturing Corporation, et al., v. District Court, et al.,* 150 Colo. 312, 372 P. (2d) 447]. He then elected to proceed to trial on June 30, 1959, against Watson without a jury on the theory of unlawful interference with his contract by Watson. Judgment entered in favor of Settlemeyer on April 24, 1961. This was after these unfortunate litigants had parts of their case, including various preliminary motions, heard by five separate judges over a period of almost six years. The hectic history of this case and the need to bring it to a belated but respectable conclusion restrains us from again returning it to the trial court so that the matter of damages can be properly determined. We elect to dispose of it at this time, however, only because Settlemeyer in his briefs filed with this court has expressly waived his rights in this respect and has consented to the award if the judgment can be otherwise affirmed.

Watson urges four grounds for reversal:

1. That the trial court erred in not allowing parol evidence to show what he calls the "true date" of the written contract between himself and Bardahl.

2. That the oral contract between Settlemeyer and Bardahl was terminable at will and therefore no possible damages could accrue when Bardahl elected to end it.

3. That the proof of damages was not only insufficient but was entirely speculative.

4. That the trial court's findings were contrary to both the evidence and the law because in substance no valid enforceable contract was shown by Settlemeyer to have been intentionally interfered with by Watson which resulted in damages to Settlemeyer.

As might be expected when the actual trial was conducted by two separate judges at two different periods after Settlemeyer altered his theory of the case due to his inability to serve Watson's co-defendants, the voluminous record presented is open to various objections and is not commended as a model to be followed by others. Concerning the confusion apparent from the record, the trial court began the trial on the theory that it would first hear evidence solely on the question of liability and if this were found in Settlemeyer's favor then it would hear evidence of damages. Notwithstanding this ruling, during the course of the trial on liability, various exhibits and testimony relating to damages were admitted. Yet, when Settlemeyer offered to adduce other competent evidence of additional damages the trial court would revert to its former position that such evidence could only be introduced later. In any event, on the record before us, and without burdening this opinion with further details, we find there is sufficient evidence to justify an award of $7500.00 to Settlemeyer, provided there is any basis upon which any damages at all may be awarded. Accordingly we address ourselves to the question of liability.

The evidence is that Watson had visited Bardahl in

Seattle, Washington, at various times, the last trip being in June 1955. Also, Watson had attempted to trade part of his territory in New Mexico to Settlemeyer in Colorado prior to June 1955 so that more economical geographical units would be held by each of them. Prior to Bardahl discharging Settlemeyer, Settlemeyer's accounts with Bardahl were to some extent delinquent and Bardahl was becoming dissatisfied with Settlemeyer. Nevertheless, Settlemeyer had expended considerable sums of his own money ($8,251.47) at Bardahl's request to advertise and promote the Bardahl products and had built up outlets of about 1500 filling stations in Colorado in five years time. At the time Watson took over, Settlemeyer had a considerable stock of Bardahl's products and promotional materials on hand — all purchased from Bardahl on the implied representation that Settlemeyer would be able to use them. Bardahl, however, instructed Watson not to buy these items from Settlemeyer, even though Watson had previously approached Settlemeyer about taking over his territory.

In addition to the above, the records show that regardless of the correct date of the written contract between Watson and Bardahl, both Watson and Bardahl recognized that Settlemeyer had some rights in his distributorship for this instrument expressly details many of Bardahl's dealings with Settlemeyer and for example states " * * * that Bardahl Manufacturing Corporation has now taken steps to discontinue any further right of C. V. Settlemeyer, as aforesaid, to continue as the distributor of said product * * * that if, however, said Manufacturing Corporation ultimately is unable to effect an effective cancellation and termination of the rights of said distributor, then First Party herein (Bardahl) incurs no liability unto Second Party (Watson) in that respect * * * ." Further on it is provided that " * * * the First Party expressly agrees to assume and pay the burden of any expense to which Second Party

may be put in connection with said litigation * * * ," i.e. if such results from Bardahl's attempt to oust Settlemeyer.

Suffice it to say, without detailing more of the events which occurred that it is immaterial whether the written agreement in fact was signed on July 1, as it states, or on August 1, 1955, as Watson asserts, for the unlawful interference of Watson with Settlemeyer's distributorship was his entire course of conduct as disclosed by this record. Though some conflicts appear in the evidence, the trier of fact found against Watson on these points by holding for Settlemeyer and we will not disturb such findings on review when supported by competent evidence. *Dollison v. Cook*, 147 Colo. 453, 364 P. (2d) 207 (1961).

Though Bardahl may have had the right to terminate Settlemeyer's oral contract at will, a point which we need not decide here, Watson had no right to induce such an act or to intentionally interfere between Bardahl and Settlemeyer by promoting his purpose and intention to take over if Bardahl was successful in ousting Settlemeyer. See: *Order of Railway Conductors, et al., v. Jones*, 78 Colo. 80, 83, 86, 239 Pac. 882 (1925); *American Surety Co. v. Schottenbauer*, 257 F. (2d) 6, 10 (1958). In the latter case the court stated that " * * * the general rule is that (in cases of employer-employee relationships) it is immaterial that the contract is terminable at will." And, see *Prosser, Torts*, 720-45 (2nd ed. 1955), and 30 Am. Jur. 75, Interference, Sec. 26.

The contract of July 1, 1955, alone admits knowledge and interference by Watson and, when coupled with other evidence before the trial court, properly led it to the conclusion that Watson was liable for the results which followed his course of conduct leading to the termination of Settlemeyer's sales agency contract. See: *Credit Investment and Loan Co., Inc., v. Guaranty Bank and Trust Company, et al.*, 143 Colo. 393, 396, 353 P. (2d) 1098 (1960), and *Sweeney v. Stenjem*, 271 Wis.

497, 74 N.W. (2d) 174, 176, 177 (1956). Also see the following cases for discussions of law relative to breaches of contracts of agency by a principal: *Baum v. Rock*, 106 Colo. 567, 574, 108 P. (2d) 230 (1940); *Falstaff Brewing Corporation v. Iowa Fruit & Produce Co.*, 112 F. (2d) 101, 106, 107 (1940); *Walter Brewing Co. v. Hoder*, 123 Colo. 421, 230 P. (2d) 170 (1951); *Navy Gas & Supply Co. v. Schoech*, 105 Colo. 374, 98 P. (2d) 860 (1940); *Uinta Oil Refining Co. v. Ledford*, 125 Colo. 429, 244 P. (2d) 881 (1952).

We hold that independent contractors or agents like Settlemeyer have the right to earn a livelihood and to continue their business unmolested by unwarranted activities of third persons and are entitled to protection in equity just like the employees of any business.

Of course, what is "unwarranted" interference depends on the facts of each case. Here the course of conduct of Watson, though in part disputed, justified the trial court in so holding as to Watson.

The judgment is affirmed.

MR. JUSTICE FRANTZ and MR. JUSTICE PRINGLE concur.