**MEMORIAL GARDENS, INC., a Colorado corporation, doing business as Memorial Gardens Cemetery, Plaintiff-Appellant and Cross-Appellee,**

v.

**OLYMPIAN SALES & MANAGEMENT CONSULTANTS, INC., a Colorado corporation, doing business as Evergreen Shrine of Rest, Denny H. Hoy, individually, Costas Rombocos, individually, and John Doe I through IV, individually, Defendants-Appellees and Cross-Appellants.**

No. 80CA0235.

Colorado Court of Appeals,
Div. II.

Sept. 9, 1982.

As Modified on Denial of Rehearing
Dec. 16, 1982.

Certiorari Granted March 7, 1983.

 

Roath & Brega, P.C., Jack W. Berryhill, Denver, for plaintiff-appellant and cross-appellee.

Rector, Retherford, Mullen & Johnson, Leo W. Rector, Jerry A. Retherford, Neil C. Bruce, Colorado Springs, Jim Travis Tice, Littleton, for defendants-appellees and cross-appellants.

BERMAN, Judge.

In this action for tortious inducement of breach of contract and interference with a contractual relationship, plaintiff, Memorial Gardens, Inc. (Memorial Gardens), appeals a judgment entered in favor of defendant Olympian Sales and Management, Inc. (Olympian). We affirm.

Olympian is a corporation started by a previous employee of Memorial Gardens. Both entities sell preneed burial contracts and thus are in direct competition for the preneed funeral business.

This action revolves around Olympian's business practice of randomly contacting customers who had preneed burial contracts with Memorial Gardens, and advising them of the terms in which they could terminate that contract and providing the forms for its termination. An *ex parte* temporary restraining order was issued against Olympian and, after a hearing on the order, it was modified and a preliminary injunction was issued.

A hearing was commenced and after a morning of testimony, the parties agreed to submit the case on stipulated facts. The trial court held that the contracts at issue were terminable at will, the business activities of Olympian were lawfully justified and did not constitute tortious interference with Memorial Gardens contracts, and the defense of lawful competition was appropriate to the case. Costs were assessed against Memorial Gardens and the preliminary injunction was dissolved.

Memorial Gardens first argues that the contracts at issue are not terminable at will. We disagree and reject its categorization of

these contracts as alternative performance contracts.

■ The pertinent contractual clause is as follows:

"VI. REFUND GUARANTEE. The Contract Purchaser in his lifetime may terminate this agreement and have refunded to him all monies paid hereunder after the deduction of an amount equal to fifteen per cent (15%) of the total contract price or the amounts paid by the Contract Purchaser, whichever [sic] is the lesser, which amount shall be retained by Colorado Memorial Parks, Inc. as liquidated damages and the parties hereto shall be released from all liability or responsibility hereunder."

In its original complaint, Memorial Gardens stated:

"The contracts are terminable at any time by the customer upon payment of a 'cancellation factor' . . . ."

The "cancellation factor" is that prescribed by statute. Section 10–15–109, C.R.S.1973. We conclude this to be *prima facie* evidence that the contracts are terminable at will.

■ Once it is established that the contract in existence was terminable at will, the protection afforded it in a claim premised upon an intention to induce a breach of contract or upon tortious interference with contract is more limited than that normally provided in contract actions. The rationale behind this general rule is that the interest being protected is only a future interest or an expectancy. In most jurisdictions where the contract is terminable at will, the privilege of justifiable business competition has been recognized, and we adopt that rule for Colorado. *W. Prosser, Torts* § 129 (4th ed. 1971); *Restatement (Second) of Torts* § 768.

It is primarily upon the definition and extent of this privilege that this appeal is focused. In many aspects, this is a case of first impression in the Colorado appellate courts.

Memorial Gardens first contends that justifiable business competition is an affirmative defense and as such must be specifical-

ly pleaded, *see* C.R.C.P. 8(c), or tried by the implied consent of both parties, *see* C.R.C.P. 15(b). *See also Radiology Professional Corp. v. Trinidad Area Health Ass'n,* 39 Colo.App. 100, 565 P.2d 952 (1977), *aff'd on other grounds,* 195 Colo. 253, 577 P.2d 748 (1978). Memorial Gardens asserts that this defense was not properly raised by Olympian.

■ At the onset we note that case law has not clearly established whether justifiable business competition is an absolute privilege or an affirmative defense. *See Radiology Professional Corp. v. Trinidad Area Health Ass'n, supra.* See also *Restatement (Second) of Torts* § 767 comment b. However, it is not necessary that we resolve this issue. Even if it is considered *arguendo* as being an affirmative defense, the record here amply supports the trial court's conclusion that the issue was properly raised.

Olympian, in its answer, stated in part:

"Defendants in contracting with former contract purchasers of Plaintiff, have acted in accord with the standard practice of the preneed funeral industry and have acted no differently than Plaintiff itself."

In addition, Olympian, in its trial statement, stated that:

"If one is a competitor regarding the business involved in the contract which is terminable at will the actor's interference with the contract is not improper."

The record discloses that much of the testimony taken during the hearing went directly to the issue of defendant's business competition and supports the conclusion that the issue was tried by the implied consent of both parties. Therefore, there was sufficient evidence to support the trial court's determination. *See Vigil v. Pine,* 176 Colo. 384, 490 P.2d 934 (1971).

Hence, the dispositive issue becomes whether Olympian's actions were within the scope of the defense. The trial court found "that the business activities of the Defendants are lawfully justified." We agree.

■ Whether the interference was proper is a question of fact to be determined by

the fact finder under the particular circumstances of each case. *Order of Railway Conductors v. Jones,* 78 Colo. 80, 239 P. 882 (1925); *Zelinger v. Uvalde Rock Co.,* 316 F.2d 47 (10th Cir.1963). The standards to be applied are set forth in *Restatement (Second) of Torts* §§ 767 and 768. Section 768 provides as follows:

(1) One who intentionally causes a third person not to enter into a prospective contractual relation with another who is his competitor or not to continue an existing contract terminable at will does not interfere improperly with the other's relation if

(a) the relation concerns a matter involved in the competition between the actor and the other and

(b) the actor does not employ wrongful means and

(c) his action does not create or continue an unlawful restraint of trade and

(d) his purpose is at least in part to advance his interest in competing with the other.

(2) The fact that one is a competitor of another for the business of a third person does not prevent his causing a breach of an existing contract with the other from being an improper interference if the contract is not terminable at will.

Section 767 states that the following factors are to be given consideration in determining whether Olympian's conduct was improper: The nature of the actor's conduct, the actor's mode of conduct, the interest of the other with which the actor's conduct interferes, the interest sought to be advanced by the actor, the social interest in protecting the freedom of action of the actor and the contractual interest of the other, the proximity or remoteness of the actor's conduct to the interference, and the relations between the parties.

Of primary significance is the first factor, the nature of the actor's conduct. Here, the parties stipulated that Olympian did not make any "false, fraudulent, derogatory, or untrue statements or representations about Plaintiffs." They further stipulated that Olympian employed random telephone solicitation.

The procedure followed by Olympian subsequent to the telephone conversation in which the contract holders were contacted was stipulated to be as follows:

"When defendant Olympian initially contacts a potential customer by telephone, a standard telephone solicitation presentation is used, an Olympian sales person meets personally with the potential customer. A sales kit provided to Olympian sales personnel includes printed cancellation forms which can be given to any potential customer to allow them to cancel any existing preneed funeral plan. The sales technique, when a potential customer already having a preneed funeral plan indicates an interest in the services or merchandise offered by defendant Olympian, includes advising this potential customer of his or her right to terminate the existing plan and obtain a refund of not less than 85% of the contract price or amounts paid, whichever is less, and in some cases up to 100%."

The parties further stipulated that "[t]he relationship between defendants and any of plaintiff's contract purchasers contacted by defendant involved competition between plaintiff and defendants for preneed funeral business."

As noted previously, preneed funeral contracts are governed by statute. The purpose is to protect "the public from unconscionable dealing...." Section 10–15–101, C.R.S.1973. Free competition in this area assures that the interests of the public will be advanced and that members of the public will be assured of obtaining a contract best suited to their desires and needs. The "cancellation factor" guarantees that the contract seller is compensated for any loss which might have been sustained by termination of the contract. The contract seller is further protected by the fact that if a competitor uses wrongful means to effect a contract cancellation, an action in tort will lie. *Watson v. Settlemeyer,* 150 Colo. 326, 372 P.2d 453 (1962); *Zelinger v. Uvalde Rock Co., supra. See*

**300**

*also Restatement (Second) of Torts § 768* (comment on clause b).

■ Based upon this record, we conclude there was sufficient evidence to support the trial court's findings as pertains to the defense of justifiable business competition, and therefore its determination will not be disturbed. *Vigil v. Pine, supra.*

Memorial Gardens' final contention is that the trial court erred in taxing it with the cost of discovery depositions. We disagree.

■ The trial court held a hearing on the issues of attorney fees and costs. Specifically addressed in that hearing was the taking of the various depositions and their subsequent use by the parties. Through the use of the depositions the defendant was able to eliminate, among other allegations in plaintiff's complaint, such false allegations as that it had a customer list of Memorial Gardens. Much of the information acquired from the depositions led to the negations of other parts of Memorial Gardens' complaint and thus to the stipulations upon which the case was submitted, thereby preserving judicial resources.

The awarding of costs is at the discretion of the trial court. *Rossmiller v. Romero,* 625 P.2d 1029 (Colo.1981). Included in the costs which may be awarded are the "taking depositions for the perpetuation of testimony." Section 13–16–122(1)(g), C.R.S. 1973 (1981 Cum.Supp.). Here, the depositions were used in lieu of testimony at trial. Therefore, we cannot conclude that, as a matter of law, the depositions were a luxury, *cf. Morris v. Redak,* 124 Colo. 27, 234 P.2d 908 (1951), nor that the trial court abused its discretion in including the cost of the depositions in Olympian's bill of costs.

We have reviewed Memorial Gardens' argument as pertains to attorneys fees and find it to be without merit.

Judgment affirmed.

PIERCE and STERNBERG, JJ., concur.