**MEMORIAL GARDENS, INC., a Colorado corporation, d/b/a Memorial Gardens Cemetery, Petitioner,**

v.

**OLYMPIAN SALES & MANAGEMENT CONSULTANTS, INC., a Colorado corporation, d/b/a Evergreen Shrine of Rest, Denny H. Hoy, Costas Rombocos, John Doe I, John Doe II, John Doe III and John Doe IV, Respondents.**

No. 83SC19.

Supreme Court of Colorado,
En Banc.

Oct. 22, 1984.

Rehearing Denied Nov. 26, 1984.

Hall & Evans, Arthur R. Karstaedt III, Denver, for petitioner.

Jim Travis Tice, Littleton, for respondents.

DUBOFSKY, Justice.

We granted certiorari to review *Memorial Gardens, Inc. v. Olympian Sales & Management Consultants, Inc.*, 661 P.2d 296 (Colo.App.1982), in which the Court of Appeals affirmed an El Paso County district court judgment that defendant Olympian Sales & Management Consultants, Inc. (Olympian) did not tortiously interfere with

preneed funeral contracts [1] of plaintiff Memorial Gardens, Inc. (Memorial Gardens). The Court of Appeals also affirmed the district court's award of attorney fees and costs. We reverse the judgment of the Court of Appeals and remand for further proceedings.

Memorial Gardens alleged by complaint that Olympian had tortiously induced several Memorial Gardens customers to breach their preneed funeral contracts with Memorial Gardens, had engaged in a conspiracy to monopolize trade,[2] and had committed deceptive trade practices [3] and unfair practices.[4] During the trial, the parties agreed to proceed only on the theory of tortious inducement of breach of contract and submitted the case on stipulated facts.

The stipulated facts establish that Memorial Gardens conducts a cemetery and mausoleum business and as part of its business sells preneed funeral plans. Olympian has a similar business, also selling preneed funeral plans. Defendant Costas Rombocos, president and sole shareholder of Olympian, previously worked with Memorial Gardens and became president of Memorial Gardens' parent company in 1976. In October 1977 he left his position and formed Olympian in April 1978.[5]

Between May 1978 and October 1979 when the stipulated facts were submitted, Olympian sold more than 1,400 preneed funeral plans, five of which were sold to persons who had preneed funeral contracts with Memorial Gardens. Olympian contacted the Memorial Gardens contract customers by random telephone calls and informed them of their right to terminate

their preneed funeral contracts and obtain a partial refund. Olympian provided printed cancellation forms which were filled out by Olympian salespersons and mailed by Olympian to Memorial Gardens. In each cancellation the customer signed a form indicating that the decision to cancel was voluntary and not a result of any criticism of the existing funeral plan. Once a customer cancelled a Memorial Gardens funeral contract to purchase a comparable plan with Olympian, Olympian sold the comparable plan at the price charged by Memorial Gardens, less the amount of liquidated damages retained by Memorial Gardens.

Preneed funeral contracts are regulated by statute. Section 10–15–109(4), 4 C.R.S. (1973), provides that in the case of default or cancellation, no preneed funeral contract may provide for the retention of more than fifteen percent of the total contract price as liquidated damages.[6] The Memorial Gardens preneed contracts stated that the purchaser could terminate the contract and receive a refund of money paid on the contract after a deduction of fifteen percent of the total contract price as liquidated damages.

The district court held that because the Memorial Gardens contracts were terminable at will, the actions of Olympian in inducing breaches of contracts were justified as lawful business competition. The court also awarded Olympian attorney fees and costs on the basis that Memorial Gardens' bringing of the action was frivolous and groundless. The Court of Appeals affirmed.

1. A preneed funeral plan involves the purchase under contract of merchandise and services for a future funeral and burial.

2. § 6–4–101, 2 C.R.S. (1973 & 1983 Supp.).

3. § 6–1–105(1)(h), 2 C.R.S. (1973).

4. §§ 6–2–101 to –117, 2 C.R.S. (1973 & 1983 Supp.).

5. The other named defendant, Denny H. Hoy, also worked for the parent company of Memorial Gardens prior to his employment at Olympian.

6. Section 10–15–109(4), 4 C.R.S. (1973) provides in part:
In case of default or cancellation, no contract, or promissory note executed in connection therewith, shall provide for the retention by the contract seller of liquidated damages of more than the amounts paid by the contract buyer or fifteen percent of the total contract price, whichever is the lesser.
The General Assembly repealed and reenacted section 10–15–109, Ch. 98, sec. 6, § 10–15–109, 1983 Colo.Sess.Laws 467, 469–71. The language at issue in this case was reenacted in section 10–15–109(1)(d), 4 C.R.S. (1983 Supp.).

We granted certiorari to consider whether the Memorial Gardens preneed funeral contracts are terminable at will, whether business competition is a proper defense to this action, and whether the district court erred in awarding attorney fees and costs to Olympian. We conclude that the Memorial Gardens contracts are not terminable at will and that Olympian's position as a competitor does not justify its interference with the Memorial Gardens contracts. Therefore, we reverse the judgment of the Court of Appeals.

## I.

■■■ Colorado recognizes the tort of intentional interference with contractual relations. *See Watson v. Settlemeyer*, 150 Colo. 326, 372 P.2d 453 (1962); *Weber v. Nonpareil Baking Co.*, 85 Colo. 232, 274 P. 932 (1929); *Order of Railway Conductors v. Jones*, 78 Colo. 80, 239 P. 882 (1925). The existence of the tort protects the relationship between parties to a contract; this protection, however, is not absolute. The *Restatement (Second) of Torts* (Restatement) describes the tort, specifying the elements that underlie liability for inducing breach of contract:

One who *intentionally* and *improperly* interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

*Restatement (Second) of Torts* § 766 (1977) (emphasis added).

■■■ Here, Olympian intentionally induced customers of Memorial Gardens not to perform their contracts. To be actionable, however, an interference with the performance of a contract must also be improper. The term "improper" directs courts to examine various factors, including the interests of the parties and the interests of society, before determining whether a person's conduct in intentionally interfering with a contract is actionable. *Id.* at § 767.[7] In this case, therefore, we must weigh the interest shared by society and Memorial Gardens in the security of established contracts against Olympian's interest in freedom of business action and society's concomitant interest in free competition.

The Restatement specifically addresses these interests in the context of business competition in section 768, which provides:

(1) *One who intentionally causes a third person* not to enter into a prospective contractual relation with another who is his competitor or *not to continue an existing contract terminable at will* does not interfere improperly with the other's relation if

(a) the relation concerns a matter involved in the competition between the actor and the other and

(b) the actor does not employ wrongful means and

(c) his action does not create or continue an unlawful restraint of trade and

---

7. The Restatement specifies the factors to be considered in determining whether an interference is improper.

In determining whether an actor's conduct in intentionally interfering with a contract or a prospective contractual relation of another is improper or not, consideration is given to the following factors:
(a) the nature of the actor's conduct,
(b) the actor's motive,
(c) the interests of the other with which the actor's conduct interferes,
(d) the interests sought to be advanced by the actor,

(e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,
(f) the proximity or remoteness of the actor's conduct to the interference and
(g) the relations between the parties.
*Restatement (Second) of Torts* § 767 (1977). These general considerations, however, are supplanted by the specific applications of the rule to competitors found in section 768 of the Restatement. *See* text *infra* at 6.

(d) his purpose is at least in part to advance his interest in competing with the other.

(2) *The fact that one is a competitor of another* for the business of a third person *does not prevent his causing a breach of an existing contract with the other from being an improper interference if the contract is not terminable at will.*

Restatement (Second) of Torts § 768 (1977) (emphasis added).

■ The Restatement provides less protection for contracts terminable at will because an interference with a contract terminable at will is an interference with a future expectancy, not a legal right. If a person is free to terminate a contract when he chooses, the other party has no legal assurance of future performance. If, however, the contract is not terminable at will, the parties have a legal right to the future performance of the contract, and the interests of the parties to the contract outweigh the interests in competition. *Restatement (Second) of Torts* § 768 comment i (1977). *See also* W. Prosser, *Law of Torts* § 129 at 946 (4th ed. 1971) (privilege of competition is recognized if contract is terminable at will). We agree with the weighing of interests expressed in section 768 of the Restatement and conclude that section 768 is dispositive of the issues in this case.[8]

The next question is whether the Memorial Gardens contracts are terminable at will. The contracts contain a cancellation provision that provides:

VI. REFUND GUARANTEE. The Contract Purchaser in his lifetime may terminate this agreement and have refunded to him all monies paid hereunder after the deduction of an amount equal to fifteen percent (15%) of the total contract price or the amounts paid by the Contract Purchaser, whichever is the lesser, which amount shall be retained by [Memorial Gardens] as liquidated damages and the parties hereto shall be released from all liability or responsibility hereunder.

The district court and the Court of Appeals held that the right of termination stated in the contract makes it terminable at will. We disagree.

■ Comment i to section 768 of the Restatement describes a contract terminable at will:

The rule stated in Subsection (1) that competition may be an interference that is not improper also applies to existing contracts that are terminable at will. If the third person is free to terminate his contractual relation with the plaintiff when he chooses, there is still a subsisting contract relation; but any interference with it that induces its termination is primarily an interference with the future relation between the parties, and the plaintiff has no legal assurance of them. *As for the future hopes he has no legal right but only an expectancy; and when the contract is terminated by the choice of the third person there is no breach of it.* The competitor is therefore

---

**8.** While we have not addressed contracts *not terminable at will* and have not specifically adopted section 768 of the Restatement, our decisions provide at least as much protection as the Restatement provides for contracts terminable at will. In *Watson v. Settlemeyer,* 150 Colo. 326, 372 P.2d 453 (1962) (unlawful interference with oral contract for distributorship), this court held that even a contract terminable at will is entitled to some protection from tortious unwarranted interference. In *Zelinger v. Uvalde Rock Asphalt Co.,* 316 F.2d 47 (10th Cir.1963) (tortious interference with distributorship agreement), the Tenth Circuit summarized Colorado law as providing "that an action for damages will lie against one who intentionally and without justification interferes with or in-

duces a breach of a contractual agreement between others, even though the contract is terminable at the will of either party. *Watson v. Settlemeyer,* Colo. 372 P.2d 453; *Credit Inv. and Loan Co. v. Guaranty Bank and Trust Co.,* 143 Colo. 393, 353 P.2d 1098; *Order of Ry. Conductors v. Jones,* 78 Colo. 80, 239 P. 882." *Id.* at 50, 239 P. 882. The Colorado Court of Appeals recognized specifically that business competition justifies inducing the breach of a contract terminable at will. *See Electrolux Corp. v. Lawson,* 654 P.2d 340 (Colo.App.1982); *Dolton v. Capitol Fed. Savings & Loan Ass'n,* 642 P.2d 21 (Colo.App.1981) (expressly adopting § 768 of the Restatement as to prospective contractual relations).

free, for his own competitive advantage, to obtain the future benefits for himself by causing the termination. Thus he may offer better contract terms, as by offering an employee of the plaintiff more money to work for him or by offering a seller higher prices for goods, and he may make use of persuasion or other suitable means, all without liability.

(Emphasis added.) A contract terminable at will is one that may be terminated at any time without legal consequence; that is, there is no breach if the contract is terminated. The cancellation clause in the Memorial Gardens contracts does not allow the contract to be terminated with impunity; the clause provides for liquidated damages in the case of a breach. A liquidated damages clause is inconsistent with the existence of a contract terminable at will.

■ The cancellation provision in the Memorial Gardens contracts complies with section 10–15–109(4), 4 C.R.S. (1973) which limits the amount of liquidated damages in cases of "default or cancellation" of a preneed funeral contract. The use of the word "default" and the allowance of liquidated damages show that the General Assembly did not intend all preneed funeral contracts to be terminable at will.

Corbin's treatise on contracts supports the view that contracts terminable at will are those "the party can terminate without penalty by way of damages or otherwise." 3A A. Corbin, *Corbin on Contracts* § 647 at 102 (1960). Referring to such contracts as option contracts, Corbin writes:

> The fact that a contract provides that in case of nonperformance by one party as promised the other shall have power to declare a forfeiture or to retain a sum of money as a penalty or as liquidated damages does not give to the first party an option between performance and nonperformance. Such a provision does not create in the promisor the privilege of not performing; it merely gives to the promisee a method of getting redress for the promisor's breach of duty.

1A *id.* § 265 at 536.

■ The Memorial Gardens contracts are not terminable at will, and therefore, the actions of Olympian in inducing the breaches were not justified business competition under the Restatement. We reverse the judgment of the Court of Appeals.

II.

Because the district court found no liability, it did not reach the question of damages. Damages will be an issue on remand, and, because there is sufficient information in the record, we comment on their availability.

■ The measure of damages in an action for intentional interference with a contract is the loss caused by the breach. *Restatement (Second) of Torts* § 774A (1977). Comment e to section 774A provides in part:

> [S]ince the damages recoverable for breach of the contract are common to the action against [the party breaching the contract and the party inducing the breach], any payments made by the one who breaks the contract or partial satisfaction of the judgment against him must be credited in favor of the defendant who has caused the breach.

The Memorial Gardens contracts contain a liquidated damages clause that limits damages to fifteen percent of the total price of the funeral contract. Memorial Gardens has already retained the statutory amount of liquidated damages from the contract breaches induced by Olympian. Memorial Gardens may not now recover further damages from Olympian.

■ The rule in Colorado is that if there is a liquidated damages clause and the liquidated amount is paid and accepted, it constitutes the total amount of damages allowable. *Medema Homes, Inc. v. Lynn,* 647 P.2d 664 (Colo.1982); *Larson v. American National Bank of Denver,* 174 Colo. 424, 484 P.2d 1230 (1971); *Marvin v. Pueblo Dairymen's Cooperative,* 131 Colo. 601, 284 P.2d 238 (1955). For similar applications of this rule in the context of actions for intentional interference with contractual relations, see *McEnroe v. Morgan,* 106

Idaho 326, 678 P.2d 595 (App.1984); *Guard-Life Corporation v. S. Parker Hardware Manufacturing Corp.*, 50 N.Y.2d 183, 428 N.Y.S.2d 628, 406 N.E.2d 445 (1980).

The fact that Olympian is not liable for damages, however, does not indicate that this case should be dismissed. In its complaint, Memorial Gardens asked that Olympian be enjoined from inducing customers to breach or cancel their contracts with Memorial Gardens. Therefore, we remand this case to the Court of Appeals with directions to remand to the district court for further proceedings on Memorial Gardens' request that Olympian be enjoined from interfering with Memorial Gardens contracts.

### III.

Our result mandates a reversal of that portion of the district court judgment awarding attorneys fees and costs to Olympian. Under C.R.C.P. 54(d), costs are allowed only to the prevailing party, and this opinion makes clear that Memorial Gardens' bringing of this action was not frivolous or groundless. *See* § 13–17–101 et seq., 6 C.R.S. (1983 Supp.).

Judgment reversed and remanded.