NELS P. BROWN, Appellee, v. C. W. NEEDLES, Appellant.

**CONTRACTS:** Substantial Performance, Etc. One who has sub-
stantially performed his contract, or is prevented from fully
performing the same because of the wrong of the other party,
is armed with the same right as would be his had his per-
formance been literal.

*Appeal from Cass District Court.*—SHELBY CULLISON,
Judge.

FEBRUARY 18, 1919.

REHEARING DENIED JULY 7, 1919.

ACTION to recover liquidated damages. It appears that
the plaintiff and the defendant entered into a written con-
tract, by the terms of which plaintiff purchased from the
defendant certain property used in and about his black-
smith shop, and the good will of his business, for a consid-
eration to be determined by the parties by methods provided
for in the contract. As a part of the contract, it was stip-
ulated that the defendant would not again engage in busi-
ness in the city of Atlantic while the plaintiff was so en-
gaged. The contract provided for liquidated damages in
the amount of $1,000 for a breach of this covenant of the
contract. Defendant did engage in business immediately
after the sale, and this action is to recover the damages
provided for in the contract. There was a directed verdict
for the plaintiff. Defendant appeals.—*Affirmed.*

*B. A. Goodspeed,* for appellant.

*H. M. Boorman,* for appellee.

GAYNOR, J.—At the time and prior to the happening of
the matters herein set out, the plaintiff and the defendant
were both engaged in a general blacksmithing business at

Atlantic, Iowa. For some reason satisfactory to both, the defendant agreed to sell his stock and the good will of his business to the plaintiff, and on the 9th day of March, 1915, an agreement in writing was entered into between them to that effect. The contract recites:

"Meaning and intending to transfer and convey to the second party the good will of the entire business heretofore operated by the defendant."

It was agreed in this contract that an inventory of the stock should be first taken, and the price fixed in this way: G. E. Hamilton and W. B. Sexton should take the inventory and fix a price upon each article in the inventory, with the understanding that the prices fixed should be the regular wholesale price at Chicago or Milwaukee, without freight added; iron and steel to be figured at wholesale base price, with regular classified extras added. An inventory was made of the stock, and the following directions given, in writing, to Hamilton and Sexton:

"In invoicing the whole, it is understood that the prices are to be the same wholesale price as you give when selling to the blacksmiths in your regular trips when taking orders, but no freight. There probably are some things that both of you do not handle, and these probably are some things that neither one handles; and on this account you will not be able to give cost. Do not guess at any of the items. If you do not know the price, leave it blank. Be sure you know before you put a price, as you may get it too high or too low."

The contract provided:

"The prices arrived at shall control in figuring up the inventory of said stock, and the total thereof shall be the amount which second party is to pay first party therefor, with the proviso, however, that, if said inventory shall exceed $4,500, then, by mutual agreement, enough articles contained in said inventory shall be removed therefrom till

said inventory shall be reduced to said sum of $4,500.
\* \* \* In consideration of the agreement herein contained, defendant agrees to not enter the blacksmith business or carriage or wagon manufacture or repair business in the city of Atlantic, Iowa, directly or indirectly, so long as the second party shall be engaged in said business, and in case of a breach of this provision of the contract, the defendant agrees to forfeit to second party the sum of one thousand dollars as liquidated damages."

Payments were to be made as follows: $100 at the execution of the contract, receipt of which was acknowledged; the conveyance by the plaintiff to the defendant of a certain lot at the agreed value of $1,000; the balance to be paid in cash or bankable note.

There was no provision in the contract as to how the price of any article invoiced should be fixed, except as above indicated. However, the parties seemed to agree that, as to all articles upon which no price was fixed by these appraisers, the prices should be fixed by the mutual agreement of the parties. These appraisers fixed prices upon nearly all the articles. Upon certain articles they fixed no value, following the instructions given them by the parties. The prices were left blank. As to many of these, the prices were agreed upon between the parties. All the articles in the inventory upon which prices were fixed, and all articles upon which the prices were agreed, were taken by the plaintiff. Some coal and some vanadium steel were left. No valuations were fixed by the appraisers as to these articles, and no prices were agreed on at which defendant was willing to part with them. There were about 1,400 pounds of this steel, claimed by the defendant to be worth 10½ cents a pound, and somewhere between 35 and 40 tons of coal.

If we should concede that the contract fixed the method of ascertaining the price to be paid for the steel, there is no competent evidence tending to show its "wholesale base

price." There is no evidence that the defendant kept this steel in his possession for delivery to the plaintiff. In fact. we are inclined to think that he did not have all of it on hand. In speaking of the steel, he said, "I still have some of the stuff left." There is no evidence that the defendant kept the coal for delivery to the plaintiff, and, should we assume that the price was to be fixed at the regular wholesale price at Chicago or Milwaukee, there is no competent evidence as to what the wholesale price in Chicago or Milwaukee was, at the time it is claimed this contract was consummated.

We construe the contract provision touching the method of fixing prices as a direction merely to the appraisers. and not as fixing the price of all articles covered by the inventory. The conduct of the parties subsequently indicated their understanding of this provision of the contract. All articles upon which no price was fixed by the appraisers, except this steel and coal, were taken by the plaintiff at prices fixed by the mutual agreement of the parties, and delivered by the defendant at a price so fixed.

As said before, defendant delivered to the plaintiff, and plaintiff received, all the goods covered by the contract, except this coal and vanadium steel. On all the articles delivered to the plaintiff, the price was either fixed by these appraisers, or agreed upon between the parties. Thereafter, the plaintiff conveyed to the defendant the lot hereinbefore referred to, and on the 20th day of April, 1915, paid him the sum of $2,760.59, in full for all articles received, the receipt reading as follows:

"Items on reverse side settled for April 20, 1915. Spring steel not included, and perch ends not included. This is a partial settlement under the contract. Blacksmith coal not included."

On the reverse side, it read:

"Received $2,760.59 in payment of items bracketed herein April 20, 1915."

This made a payment to the defendant by the plaintiff on the contract of $3,860.59. Soon after this payment was made and this receipt given, the defendant opened a shop in the city of Atlantic, in violation of his agreement, and has been conducting a general blacksmith shop there ever since. Plaintiff brings this action to recover the damages provided for in the contract on account of this breach of the conditions of the contract.

Defendant pleaded a general denial. The real defense interposed is that the plaintiff also breached his contract; that his agreement was to take property of the defendant not to exceed the amount of $4,500; that he has only taken and paid for $3,860.59; that he has refused to take the vanadium steel and the coal; that, having refused to perform his contract in full, he has no right to insist upon any of the provisions of the contract made in his favor.

It will be noted that neither party has rescinded this contract; that it stands just as it was written; that the plaintiff has taken all the property that he agreed to take to which prices were attached by the chosen appraisers, and all other property included in the inventory upon which no valuation was fixed by the appraisers on which the parties were able to agree as to the price which plaintiff should pay; and that he was willing to take the coal and steel on the contract whenever a price was fixed or agreed on at which he should take it, under the contract.

That defendant violated the condition of the contract relied upon, is shown beyond any question. The damages to the plaintiff accruing from such violation are fixed in the contract. Plaintiff testifies:

"I was willing to take the steel at wholesale price. Defendant did not want to sell it to me."

He was asked this question:

"Did you take any vanadium steel or any spring steel? A. I did not. He would not let me. The spring steel was graded so high till it was not carried in any wholesale house, and it was not priced by either of the appraisers, and we could not agree on the price. I offered Mr. Needles wholesale price for the steel, and he wanted more. I offered to pay him for the steel just what I could buy new steel for in St. Louis or Milwaukee, or either place. I offered him cash value for it, and he wouldn't take it."

As to the coal, he testified that he offered defendant wholesale price for that, but defendant would not take it; that defendant would not agree to part with the coal at the wholesale price without freight, but said:

" 'If you want the coal, you will have to give me $7.50 a ton.' It may have cost him that, but the freight was added, and the freight was twice as much as the coal. Lots of stuff that I did take had no value in fact."

It would be profitless to set out all the testimony showing what was done and said between the parties touching this coal and steel. A reading of the whole record confirms us in the opinion that the plaintiff was always ready and willing to take this coal and this steel, either at a price to be agreed upon between the parties, or at the wholesale price. The wholesale price was never determined nor fixed, nor was the price of these articles ever agreed upon between the parties. Plaintiff was guilty of no breach of his part of the contract in respect to this coal and steel, as the price was never fixed or agreed upon at which plaintiff was required to take it, or defendant was willing to part with it.

Much is said in argument to the effect that plaintiff cannot recover unless he has shown that he has fully complied with all of the terms of the contract on his part, and authorities are cited in support of that contention; but, as we are satisfied that the plaintiff has performed all the con-

ditions on his part to be performed, so far as they are capable of performance, and that the fault, if any, that it was not fully performed does not lie with him, it does not serve the defendant as a basis for defense.

It is elementary that, where a contract has been substantially performed, and an attempt to complete performance is made, the party attempting to perform may recover as effectually as though performance had been completed. The refusal to accept performance of a part of a contract is a waiver of any further effort, on the part of the party offering the performance, to carry out the part of the contract on his part; and, the contract not being rescinded, but remaining in full force, he may recover for a breach, the same as if full performance had been made. This, we think, is the situation here, and the court was right in directing a verdict for the plaintiff. Its action is sustained. —*Affirmed.*

LADD, C. J., PRESTON and STEVENS, JJ., concur.