KENNETH M. RASCH, d/b/a RASCH CONSTRUCTION COMPANY, appellee, cross-appellant, v. CITY OF BLOOMFIELD, appellant, cross-appellee.

No. 52592.

(Reported in 153 N.W.2d 718)

OCTOBER 17, 1967.

REHEARING DENIED JANUARY 8, 1968.

D. W. Harris, of Bloomfield, for appellant, cross-appellee.

McCarville & Bennett, of Fort Dodge, for appellee, cross-appellant.

MASON, J.—Kenneth M. Rasch, doing business as Rasch Construction Company, brings this law action against the City of Bloomfield to recover for extra labor performed and materials furnished in the desilting of the silting basin of the city's municipal water reservoir.

A contract, with general and detailed specifications, was prepared by the consulting engineers but not signed by the parties. However, both plaintiff and defendant rely on and

consider the contract as binding on them. It was so considered by the trial court.

Defendant admitted owing plaintiff $4247, subject to two small claims and offered to confess judgment in that amount. Plaintiff claimed in excess of $15,000 for additional work and services.

Trial to the court without a jury resulted in judgment for plaintiff for only a portion of his claim, but in excess of the amount defendant admitted owing.

I. Defendant appeals from the court's allowance for additional work for clay removed from the banks of the silting basin, contending the contract provided for the removal of silt from the basin. Defendant maintains the removal of clay from the banks of the silting basin was done by plaintiff in order to provide roads into the bottom of the basin by which he could haul out the silt, this area was not a part of the silting basin and the removal of the clay did not constitute the removal of silt.

Plaintiff has cross-appealed by reason of the court's denial of the full amount of his claim.

II. Bloomfield receives its water supply from Lake Fisher. During the runoff silt is carried down to the lake. In an effort to prevent the deposit of silt which would reduce the lake's capacity a basin had been constructed at the extreme south end to drop the silt from the water and there store it. The silting basin, separated from the main body of the lake by a county road, is connected by four pipes which run through the road. Over the years the silt deposited in the basin up to the flow-pipes, causing silt to drift through to the main body of the lake.

A removal project to renew the capacity of the silting basin became necessary. The purpose was to create a basin ahead of the main body of the lake with capacity to trap additional silt and keep it from carrying over into the lake. Consulting engineers were employed to propose specifications for the project.

A "Notice of Hearing and Letting Invitation to Bidders" was given, sealed bids were received and plaintiff's proposal was accepted.

Defendant's engineer realized that 20, 30 or possibly 40 thousand cubic yards of silt were present in the basin. Because of the city's budget limitations, it was decided to take bids on the removal of 10,000 cubic yards. Defendant hoped to remove more, with the total quantity to be removed determined by cross sections, one after dewatering and another after completion. As an estimate, for the purpose of bidding, the approximate amount of 10,000 cubic yards was employed. Plaintiff's bid on the estimate of 10,000 yards called for a gross payment of $24,000. He was to be permitted to remove the silt by any method he chose except hydraulic dredging.

Item 1 of the detailed specifications provides for installing temporary overflow pipes, isolating silting area from the main body of the lake and dewatering for a lump sum of $5000. We are told "dewatering" means pumping out the water and thus isolating the basin area from the main body of the lake. This process was a necessary and separate unit of operation in connection with the number of yards to be removed.

With reference to this item, the contract provides: "It will be the responsibility of the contractor to place temporary overflow tubes as indicated in the plans to protect the county road during the time the existing corrugated metal pipes are closed and the work area is dewatered."

Item 2 provides for removal of approximately 10,000 cubic yards of silt from the silting basin and hauling to the designated area at a price of $1.65 per cubic yard; a total of $16,500.

The contract provides: "Silt removal and disposal. * * * Adequate pumping facilities shall be maintained to keep the area dewatered during the progress of the work and protect the completed work prior to acceptance by the city. * * * It shall be the responsibility of the Contractor to maintain portions of the route which are not permanent roads during prosecution of the work. Upon completion of the work temporary routes shall be returned to original condition." The silt was to be hauled to a specified dump area and deposited in layers not to exceed seven inches in depth on agricultural land. Uniformity of deposit was not required. However, the contractor was to level the area.

·Item 3 provides for all other miscellaneous work required to complete the job, including removal of temporary structures and pipes and cleanup of the jobsite for a lump sum of $2500.

September 28 plaintiff proceeded to remove the silt from the basin. October 30 the city engineer requested the consulting engineer and two city councilmen to visit the construction site because a preliminary cross section had indicated 10,000 cubic·yards of material had been removed. As a result plaintiff was orally instructed to continue the project. The consulting engineer gave no written directions as required by item 18 of the general specifications for the removal of silt over the approximately 10,000 yards referred to in plaintiff's proposal. Plaintiff did not give the engineer written notice of extra cost of additional work as required by item 10 of these specifications.

Plaintiff continued on the project until November 12 when he was instructed by the consulting engineer to stop.

The city engineer made three estimates during the progress of the work. The first, on November 2 when he determined 9400 cubic yards had been removed and approved payment .to plaintiff for. this amount. At the same time the engineer approved item 1 of the contract as satisfactorily completed. The second estimate was ·made December 7 when he approved payment for additional silt removed. The engineer determined that 28,000 cubic yards had been removed. Plaintiff said he had removed 3491.4 yards more than the engineer estimated.

In a third estimate the engineer determined that a total of 28,013 cubic yards of silt had been removed. The total amount of material removed exceeded this somewhat. The determination of silt removed was made by taking cross sections of the excavation, a standard procedure provided by the contract to determine quantities.

In his final estimate the engineer approved payment to plaintiff of $53,721.45. This was computed on the basis of $5000 for 100 percent completion of item 1, $46,221.45 under item 2 for removal of 28,013 yards at $1.65 and $2500 for 100 percent completion of item 3. ·

Previously approved payments totaled $49,174.45, leaving

a balance owing subject to the allowance of a $300 offset of $4247, the amount for which defendant offered to confess judgment.

III. Plaintiff claims he should be allowed additional compensation for: (1) dewatering during the time he was removing silt over the approximately 10,000 cubic yards referred to in his proposal (an additional 20 days), (2) silt displaced by the clay roadbeds placed by him in the bottom of the silt basin and for additional storage area provided by the removal of clay from the side of the silt basin, and (3) leveling of all silt over 10,000 cubic yards.

The court denied that portion of plaintiff's claim based on items 1 and 3 of the detailed specifications. Plaintiff makes no complaint of this ruling in his cross-appeal.

The controversy in both appeals is the recovery allowed plaintiff for extra work under item 2. Plaintiff had claimed $33,212.85 for extra labor under this item. The city had approved additional payments of $29,721.45 based on 18,013 cubic yards at $1.65.

IV. Plaintiff contends his proof entitled him to extra compensation for all silt displaced by clay in the basin and this amounted to 2800 cubic yards at $1.65 per yard for a total of $4620.

In performing the work on the project the silt basin was isolated from Lake Fisher and dewatered. Silt was then removed from the basin bed by trucks. As a layer of silt was removed, seepage from the new silt face continually provided water which had to be removed. This dewatering process occurred daily. As the silt removal process proceeded into the silt face plaintiff encountered difficulty because this soft area would not support the trucks and heavy equipment essential in removing the silt.

It became necessary to build roads in the lake bottom to get the trucks in to load and haul the silt. Clay placed on top of the silt would not support the equipment so it became necessary to remove silt and put clay in its place for a usable roadbed.

For every load of clay put in the bottom of the area for road purposes, a load of silt had to be removed. However,

plaintiff did not remove this clay before the project was stopped. As a result, a volume of silt removed and displaced with clay would not show on the cross section. Some of the clay used for road purposes was removed from the side slopes of the basin and pushed by a bulldozer into the basin bed where silt had been removed. Other clay was taken from across the road with defendant's approval.

The court concluded a total of 1799.2 cubic yards of clay had been removed from the bank of the silt basin, both above and below the waterline, which was excluded by defendant's engineer in computing quantity of silt removed from the basin. Of this, 1425.28 cubic yards had been removed from the banks of the silt basin below the waterline as shown by cross sections. The court concluded the capacity of the silt basin had been increased by the removal of clay from the bank or side slope below the waterline and allowed plaintiff recovery for this yardage at $1.65 per yard for a total of $2351.71. No extra compensation was allowed from silt removed that was replaced by clay from across the road. As stated, no extra computation was allowed for additional dewatering.

Plaintiff contends he actually removed 2800 cubic yards of silt which had been replaced by clay; that when the engineer stopped the project plaintiff was not permitted to remove this clay and a substantial quantity of removed silt was not computed in fixing his compensation. Defendant, on the other hand, contends as stated in Division I, supra, its contract was for the removal of silt, that the clay left in the bottom of the basin was of no benefit to the city.

V. This case is not reviewable de novo here but only on errors assigned. The court's findings of fact have the effect of a jury verdict and are binding upon us if supported by substantial evidence. Rule 344(f)(1), Rules of Civil Procedure.

Defendant asserts the court erred in admitting testimony of plaintiff and his witness, John Peed, as to their understanding of the meaning of the contract and allowing them to interpret the contract when there was no allegation of ambiguity.

Defendant contends under this assignment although the court in its opinion seems to adopt the view the evidence com-

plained of is inadmissible, even though admitted over defendant's objection, then relies upon it in interpreting the contract.

Defendant has set forth in two divisions of his brief the specific part of the record upon which error is predicated in connection with this assignment. Division (a) relates to plaintiff's testimony. Inquiry was made as to how plaintiff arrived at the total contract price, his study of the plans and specifications, inspection of the jobsite, conversations had with the consulting engineer and the method employed in arriving at the charge for work called for under items 1 and 3 in the original bid. All this occurred before plaintiff submitted his proposal.

Peed's testimony is considered in the other division. Inquiry was made as to what was entailed in the continued performance of the contract, i.e., removal of silt in excess of the 10,000 cubic yards, the method employed in arriving at the original proposed price, the fair and reasonable value of the extra work performed under items 1 and 3 and facts concerning removal of the temporary haulroads.

Practically the entire testimony of both witnesses related to plaintiff's claims under items 1 and 3. The court's judgment was favorable to defendant on these items.

"It is sometimes said that if the words of a contract are plain and clear, evidence of surrounding circumstances to aid interpretation is not admissible. But some of the surrounding circumstances always must be known before the meaning of the words can be plain and clear; and proof of the circumstances may make a meaning plain and clear when in the absence of such proof some other meaning may also have seemed plain and clear. Sometimes the circumstances proof of which is offered do not have any probative value and do not affect a meaning that is arrived at without them. When such is the case, such circumstances are immaterial. In other cases, the testimony of additional factors may not be believed by the trial court after it has been admitted, in which case the meaning of words that is otherwise 'plain and clear' will be adopted.

"* * * Of course, an otherwise 'plain' meaning should not be disturbed by the proof of irrelevant circumstances or of those having only a remote bearing or inconsequential weight.

552

But until a court knows the circumstances it cannot properly say that they have no probative value." 3 Corbin on Contracts, section 542.

We believe the court instead of adopting the view the evidence was inadmissible, as suggested by defendant, found after consideration the evidence admitted lacked probative value. The court did not err in admitting the evidence in considering plaintiff's claims under items 1 and 3.

■ As to any evidence given by either witness as it related to the claim under item 2 it was not received for the purpose of contradicting or varying the terms of the written contract, but for the purpose of aiding the court in ascertaining the true intent and meaning of the parties to the contract as revealed by the language used there; "* * * 'not by showing that the parties meant something other than what they said, but by showing what they meant by what they said.' " Central Heights Imp. Co. v. Memorial Parks, Inc., 40 Cal. App.2d 591, 608, 105 P.2d 596, 605, and citations. The court did not err in ruling on defendant's objection.

VI. Defendant combines its remaining assignments of error in argument, asserting the court erred in failing to sustain (1) defendant's motion to dismiss plaintiff's petition made at the close of plaintiff's evidence and (2) its motion for judgment notwithstanding and for new trial.

Defendant contends since there was no claimed ambiguity in the contract all of plaintiff's evidence was improper and he, therefore, failed under the contract to establish his right to any additional compensation over and above that which defendant admitted and had offered to pay. We do not agree.

■ "* * * [I]n a strict sense, every contract needs interpretation * * *.

" 'To say dogmatically that we "know what a word means" *in advance of its utterance* is nonsense. All we can know in advance is *approximately* what it *will* mean. After the utterance, we interpret what has been said in the light of both verbal and physical contexts, and act according to our interpretation * * *' " (Emphasis appears in original). 4 Williston on Contracts, Third Ed. (Jaeger), section 609, quoting

from Liberty Mutual Insurance Co. v. Hercules Powder Co., 3 Cir., 224 F.2d 293, 296.

■ "Evidence of the circumstances is always admissible in aid of the interpretation of an integrated agreement. This is so even when the contract on its face is free from ambiguity." Atlantic Northern Airlines v. Schwimmer, 12 N.J. 293, 301, 96 A.2d 652, 656.

■ Although we do not agree with defendant's contention the court erred in failing to sustain its motion to dismiss plaintiff's petition, we do not find substantial evidence in the record which would support the trial court's finding that plaintiff was entitled to extra compensation for 1799.2 cubic yards of clay removed from the side slope or bank of the silt basin. To the extent the trial court allowed recovery for this item it was in error.

VII. In considering plaintiff's contention as asserted in his cross-appeal we believe an issue was presented as to whether plaintiff was prevented from removing the clay used as foundation for haulroads from the pit which was evidently neither decided nor mentioned by the court in its judgment. Of course, if this issue had been decided favorably for plaintiff he would be entitled to compensation for the amount of silt removed that was replaced by clay.

■ "It is elementary that where a contract has been substantially performed, and an attempt to complete performance is made, the party attempting to perform may recover as effectually as though performance had been completed. The refusal to accept performance of a part of a contract is a waiver of any further effort, on the part of the party offering the performance, to carry out the part of the contract on his part; and, the contract not being rescinded but remaining in full force, he may recover for a breach the same as if full performance had been made." Brown v. Needles, 186 Iowa 878, 884, 170 N.W. 804, 806.

■ Defendant in maintaining the basin was engaged in a proprietary rather than a governmental function. Code section 368.27; Lubin v. Iowa City, 257 Iowa 383, 390, 131 N.W.2d 765, 770; Leighton Supply Co. v. Fort Dodge, 228 Iowa 995, 999, 292 N.W. 848, 850.

554

█ ·We believe plaintiff is entitled to have this issue determined.

VIII. On defendant's appeal the trial court is reversed for error in allowing plaintiff the additional recovery of $2351.71. On plaintiff's appeal the cause is reversed and remanded for determination of the single issue considered in Division VII, supra.—Reversed on both appeals and remanded.

All JUSTICES concur.