HENRY W. KEDING, appellee, v. F. C. BARTON et al., trustees under Barton Profit-Sharing Plan, Bankers Trust Company, an Iowa Corporation, appellants.

No. 52668.

(Reported in 154 N.W.2d 172)

328

November 14, 1967.

J. R. Austin, Ross H. Sidney and Marvin F. Peterson of Austin, Grefe & Sidney, of Des Moines, for appellants.

Curtis Bush of Bush & Evans, of Davenport, for appellee.

BECKER, J.—Plaintiff, a former employee of Barton Naptha Corporation, terminated his employment with the company. At the time of termination plaintiff had an interest in the profit-sharing plan. Funds equal to plaintiff's interest were deposited for his benefit in a savings account in lieu of payment to him. Plaintiff alleges that he is entitled to payment of this money at date of employment termination, rather than at a future date as provided by amendment to the profit-sharing plan. The trial court entered judgment for plaintiff. We affirm.

Plaintiff was a full-time employee of Barton Naptha Cor-

poration, Bettendorf, Iowa, from March 1952 until July 30, 1965, when he resigned from the company.

On October 31, 1956, Barton Naptha adopted a profit-sharing plan and trust agreement for the benefit of its employees. The plan was amended twice, once on January 7, 1959, and again on January 11, 1965.

The plan provides that any employee is eligible to participate upon the completion of continuous employment for one year, provided he is at least 21 years old, a full-time employee and has signed an application for an insurance contract. Plaintiff met these requirements.

In this law action defendants rely on but one error for reversal; i.e., that the court "Erred in determining that the appellee's right to terminate his employment and receive his share under the profit-sharing plan was a vested right at the time the amendment to the profit-sharing plan was adopted on January 11, 1965."

▮ I. The parties agree that the profit-sharing plan was a part of the employment contract between plaintiff and Barton Naptha Corporation. This is consistent with our recent case, Murphy v. R. J. Reynolds Tobacco Co., 260 Iowa 422, 148 N.W.2d 400, and the cases cited therein, particularly Cantor v. Berkshire Life Ins. Co., 171 Ohio St. 405, 171 N.E.2d 518.

II. The question is one of contract interpretation. The plan calls for computation of profit shares to be made by the company at the end of each calendar year. The share of each participating employee is to be added to his account on an annual basis. The pertinent parts of Articles VII and XI read:

"If a Participant's employment is terminated for reasons other than death, disability or retirement, the amount of benefits payable to him will be determined by the period he has been a Participant. If such period is less than three full years, he shall be given the ownership of the Contract on his life and no more. If the period is at least three years, he shall receive, in addition to the Contract, a percentage of his total credits on the last preceding valuation date, less the premiums paid on the contract, based on the following table:" The percentage formula is then set forth.

Article XI—Amendments "XI–1. The Employers reserve the right, through action by their Boards of Directors, to amend this Plan without the consent of any Participant or death beneficiary; provided, however, that no amendment to this Plan shall deprive any Participant or death beneficiary of any vested equitable interest herein, * * *."

The amount credited to plaintiff's account is not in controversy. His account showed $10,090 to his credit on December 31, 1964. A $100 insurance premium was deducted from that amount. The parties agree that on July 10, 1965, plaintiff was entitled to 90 percent of that balance or $8991. The question remains. When is the sum payable?

The January 1965 amendment added to Paragraph VII the following: "The amount of money due an Employee under this paragraph shall be deposited by the Trustee in insured savings accounts or invested in appropriate obligations of the United States, and together with the interest thereon, paid to the Employee on the earliest date on which he could have elected to retire had his employment continued; provided, however, that in the sole discretion of the Trustees, payment to the Employee may be made at an earlier date; and provided further, that in the event of the death of the Employee, payment shall be made forthwith to his beneficiary."

Plaintiff contends that this amendment could not affect his right to receive the $8991 when he left the company. He relies on the prohibition in Paragraph XI: "no amendment to this Plan shall deprive any Participant or death beneficiary of any vested equitable interest herein." He claims the right to receive the money when he quit was a vested right that could not be changed by amendment without his consent.

In support of his contention plaintiff introduced an explanatory pamphlet circulated by the company after the amendment of 1965. It purported to explain the plan as amended. This pamphlet read in part:

"If a participant's employment is terminated for reasons other than death, disability or retirement, he will be given the ownership of his retirement income contract and a percentage of his portion of the deposit administration account based on

years of participation, namely, 30 percent for three full years and an additional 10 percent for each additional full year of participation, with 100 percent for ten full years or more.

## "AMENDMENTS

"The plan may be amended but no amendment shall affect then existing rights of participants."

The pamphlet ended with the following paragraph: "This pamphlet is intended only as a brief summary of the plan; and if more specific information is desired, it may be secured from the general manager of any of the participating companies."

Defendant testified that at a meeting with Mr. Powers, who was secretary-treasurer of the company, during the latter part of 1956, Mr. Powers was asked what would happen if an employee would quit. "Mr. Powers stated that we would get our money if we quit after three years and our percentage of the share for each year thereafter."

The trial court held in part: "The Court finds from the evidence and a proper interpretation of the terms of the plan that plaintiff was the owner of a vested equitable interest in the funds in the trustees' hands to the extent of the percentage specified in the plan based upon his years of service being 90 percent of $9990.36 or $8991.32, and had the vested right to receive the same at anytime he quit his job. This was an 'existing right' when the amendment was adopted on January 11, 1965. The time of payment was a vital part of the right." There was substantial evidence to support the trial court's findings. Thus they are binding on us. Rule 344(f)(1), Rules of Civil Procedure.

III. Defendants argue that the term "vested equitable interest" as used in the plan means that part of the employer allocations to the trust fund which had accrued could never be forfeited by the employee but the term does not include rights to possession; i.e., the vesting is a vesting in interest; not in enjoyment. Therefore, the *time of enjoyment* could be changed without violating paragraph XI.

Defendant cites several cases dealing with contingent and vested interests as those subjects are treated in the construction of wills; and in one case, the effect of a retroactive statute on

certain moneys collected by a county. They are not persuasive here.

The trial court refused to apply a limited and technical meaning to "vested equitable interest" as it might be construed in cases involving interpretation of a deed or will. It decided this case on the meaning to be given the phrase in the context in which it was used and under the circumstances surrounding the preparation of the instrument. This solution was correct.

IV. We give a contract the practical meaning placed upon it by the parties. Gilbrech v. Kloberdanz, 252 Iowa 509, 107 N.W.2d 574.

"Evidence of the circumstances [surrounding the making of the contract] is always admissible in aid of the interpretation of an integrated agreement. This is so even when the contract on its face is free from ambiguity." Atlantic Northern Airlines v. Schwimmer, 12 N. J. 293, 301, 96 A.2d 652, 656; Rasch v. City of Bloomfield, 261 Iowa 544, 153 N.W.2d 718. The matter of admissibility of extraneous evidence as an aid to the interpretation of a written instrument is carefully analyzed in Hamilton v. Wosepka, 261 Iowa 299, 154 N.W.2d 164.

Defendant urges the rights of the parties are to be determined from the trust instrument and not from the plan, the verbal exchange of the parties or the fact plaintiff misinterpreted the effect of the January 11, 1965, amendment. We think the trial court did determine the rights of the parties from the trust instrument. In doing so it used the evidence which was admissible for the purpose of aiding it in such interpretations. This was proper under rules recognized in the last two preceding cited cases.

It should be noted that this case differs from Davenport Osteopathic Hospital Assn. v. Hospital Service, Inc., 261 Iowa 247, 154 N.W.2d 153; in that the contract here allows amendments but limits the right to amend by the language quoted. It is the effect of that language that is determined. We find that under the circumstances here presented the amendment did deprive plaintiff of a vested equitable interest which had accrued on the date of amendment and was therefore ineffective as to this plaintiff

in relation to the funds that had accrued prior to January 11, 1965.

V. Defendants contend the reason for the amendment is that as the accumulated fund to the credit of each worker grew employees tended to terminate their employment to get the immediately available cash; just opposite to the effect that was intended. The purpose of the plan was to encourage stability in the work force and provide accumulated savings at time of retirement as a basis for the retirement funds for the individual employee. These purposes were not spelled out in such detail. Plaintiff, as employee, testified that he did not understand such purposes in relation to the funds. Plaintiff was asked:

"Q. Was it your understanding that this profit-sharing plan and trust was designed from the standpoint of—of more or less of a retirement type contract; it was geared to provide money for you at your retirement and so forth? A. No, that it was—it was a profit-sharing plan and that they would buy you an insurance policy which was supposed to be—as I understood it, the retirement end of it was an insurance policy and the rest of it was a plan—profit-sharing plan."

Whatever the motivation for the amendment it cannot be made contra to the authority to amend.

VI. It is not argued, nor do we find, that the time of future payments could not be changed, or even that accrued payments could not be postponed as a condition of continued employment. But we apprehend that such action, if available to defendant, would have to be taken in such manner as to give the employee clear notice that the contract was in fact being changed. He would then have the right to continue his work with the company or leave. That was not done. Plaintiff contends that he did not protest because he believed the amendment would not affect his accrued rights. Under the circumstances that was a reasonable position. The trial court so found.—Affirmed.

All JUSTICES concur except LeGRAND, J., who takes no part.