Edgar Herbert **VICKERY**, Appellant,

v.

**FISHER GOVERNOR COMPANY**,
Appellee.

No. 22593.

United States Court of Appeals
Ninth Circuit.

Oct. 28, 1969.

Edward K. Allison (argued) of Ehrlich & Allison, San Francisco, Cal., Stewart, Miller, Wimer, Brennan & Joyce, Des Moines, Iowa, for appellant.

Rex J. Ryden (argued) of Cartwright, Druker, Ryden & Fagg, Marshalltown, Iowa, Sheldon Witcoff, of Bair, Freeman & Molinare, Chicago, Ill., Thomas N. Kearney, of Pelton & Gunther, San Francisco, Cal., for appellee.

Before BARNES, HUFSTEDLER, and KILKENNY,* Circuit Judges.

BARNES, Circuit Judge:

The action appealed from in this diversity case [1] is, first, the granting by the district court of appellee's motion for summary judgment, and second, the denying of appellant's motions to set aside the summary judgment and grant a new trial and to amend appellant's first amended complaint for damages to add a new cause of action. Our jurisdiction to review the lower court's action arises under 28 U.S.C. § 1291.

Appellant is a citizen of the State of California. From 1955 to 1960, he developed and sold a ball valve used principally in the aerospace industry. Patent applications covered the design of the valves.

In 1960, appellant began extensive negotiations with appellee, an Iowa corporation. A ten year contract, containing royalty and sales agreements, resulted. Appellant assigned to appellee his interest in five patent applications relating to the valves for $100,000 and agreed, during the period royalties were payable, to serve as a consultant to appellee. As here relevant, the royalty agreement provided that "Fisher has the unrestricted right to terminate this agreement at any time by giving Vickery at least sixty (60) days prior written notice. * * *" R.T. 11. If appellee exercised this right and terminated the agreement within five years of the date of signing, it was obligated to return to appellant all patents and patent applications assigned by appellant to appellee. Additionally, appellee was prohibited from continuing to manufacture the ball valves. (No restrictions were listed as imposed on appellee should it terminate the agreement after five years.) This agreement was not amended by any writing or agreement between the parties and was signed only after vigorous bargaining by attorneys for each side.[2]

---

* Hon. John F. Kilkenny was a United States District Judge, sitting with this court by designation, at the time oral argument in this case was heard.

1. The parties agree that the substantive law of the State of Iowa is controlling.

2. The opposing position taken by the parties are clearly demonstrated by appellant's own showing as to changes made between the first contract proposed, and the contract later signed.

After payment of $200,000 to appellant, and *five years and one day* after the signing of the contract, appellee exercised its option to terminate.

In his first amended complaint, appellant sought damages in the amount of $1,131,376 for appellee's alleged breach of the sales and royalty agreements and for breach of the fiduciary and confidential obligation alleged to be due appellant from appellee, and $200,000 in punitive damages. The district court, after reviewing the pleadings, exhibits, the pre-trial order and all stipulations, admissions, declarations, affidavits, pre-trial statements and memoranda and oral argument by counsel on the motion for summary judgment, determined there was "no genuine issue of material fact," and granted appellee's motion. R.T. 391. The district court later denied appellant's motion to set aside the summary judgment and to allow a new trial.

▇▇▇▇ We first consider the correctness of the granting of the motion for summary judgment. Federal Rule of Civil Procedure 56(c) provides, in part, that summary judgment:

> "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

A district court presented with a motion for summary judgment does not try issues of fact; it merely determines whether factual issues exist to be tried. Our role in reviewing the granting of a motion for summary judgment is to "determine whether there is any genuine is-

sue of material fact underlying the adjudication, and, if not, whether the substantive law was correctly applied." 6 Moore, Federal Practice ¶ 56.27 [1] at 2973 (footnote omitted). *See* Koepke v. Fontecchio, 177 F.2d 125 (9th Cir. 1949); Keehn v. Brady Transfer & Storage Co., 159 F.2d 383 (7th Cir.), cert. denied, 331 U.S. 844, 67 S.Ct. 1535, 91 L.Ed. 1864 (1947).

We note, as did the district court, that the contract's provisions for termination are unambiguous (R.T. 483). Unless appellant can produce a persuasive legal theory which looks beyond this language, appellee's conduct was justified, and summary judgment was correctly granted.

Appellant submits two theories in his argument for reversal.

▇▇▇▇ Appellant first contends that a fiduciary relationship was created between appellant and appellee as a result of their contract. Appellee's termination of the contract, allegedly in bad faith, resulted in an unjust enrichment for appellee and a material detriment to appellant, and violated this fiduciary obligation. We need not reach the substance of this allegation because the crux of appellant's argument is that during the contract negotiations appellee orally promised that termination would only occur if the valves could not be manufactured at a profit. We decline to consider this proffered basis for the finding of a breach of duty by appellee. Iowa has made the parol evidence rule one of substantive law, not evidence. Rasmus v. A. O. Smith Corp., 158 F.Supp. 70, 88 (N.D.Iowa 1958). *See* Martin v. Stewart Motor Sales, 247 Iowa 204, 73 N.W.2d 1, 4 (1955). The Iowa Supreme Court has stated, in Gordon v. Witthauer, 258

---

The first proposed contract (Plaintiff's Ex. 112, C.T. 427–433, at 432, ¶ 5) gave Fisher "the unrestricted right to terminate this contract, and its further obligations hereunder," by notice in writing given to appellant. Appellant rejected this.

Appellant then suggested a revised contract (Plaintiff's Ex. 114, C.T. 434–445,

¶ 5) that gave Fisher a right to terminate the contract *during the first five years,* "but not subsequent to that date," on sixty days notice.

Fisher refused to approve this suggested contract, but each party did approve the contract here sued on. (Ex. A, attached to Plaintiff's Complaint, C.T. 7–16, ¶ 6, p. 11.)

Iowa 617, 138 N.W.2d 918, 920 (1965) that:

> "The reason for the [parol evidence] rule is that the parties have made their agreement, of which the written contract is evidence, and to permit additions or variances would be to change the terms of their agreement. Fidelity Savings Bank v. Wormhoudt Lumber Company of Ottumwa, 251 Iowa 1121, 1126, 104 N.W.2d 462, and citations.

> "Simply, it is to prevent fraud and prevent contracting parties from being charged with agreements not in fact made."

We agree with the trial court that the document here involved is clear on its face; if the parol evidence rule has any validity, we cannot allow appellant to rely on extrinsic evidence to modify a contract without ambiguity. *See* Aultman v. Meyers, 239 Iowa 940, 33 N.W.2d 400, 405 (1948).

But appellant insists that the Iowa law has been modified (as has that of some other jurisdictions), and that we cannot look solely at the language of the parties, *i. e.*, the common and normal sense of the words, but must look at the intent with which the parties used those words. In other words, the claim is that "an unrestricted right to terminate" was intended by the parties to mean "a restricted right to terminate."

Appellant, in short, relies on Wigmore's "mutual standard," as distinguished from (1) the "popular standard," or (2) the "local standard," or (3) the "individual standard." 9 Wigmore on Evidence, 3d ed., §§ 2458–2478; 3 Corbin on Contracts, § 535; and more particularly, Hamilton v. Wosepka, 154 N.W.2d 164, 168 (Iowa 1967), and Keding v. Barton, 154 N.W.2d 172 (Iowa 1967).

Because of the large reliance by appellant on the *Wosepka* case, we think we should briefly consider it.

In the *Wosepka* case, the Supreme Court of Iowa approved the action of the trial judge in receiving oral testimony in evidence, not "for the purpose of varying the terms of a written instrument, [but] * * * for the purpose of interpreting it." 154 N.W.2d at 167.

In *Wosepka*, the plaintiff was suing for additional salary. He was being paid $15,000 per year when the contract was executed. The contract provided: *"said salary to be increased or decreased in proportion to the increase or decrease of the salary or salaries"* (154 N.W.2d at 165) of Wosepka, Prouk and Chandler. Their salaries were thereafter increased to $15,000 per year from $7,000, $10,000 and $10,000, respectively.

"We believe," said the Iowa court, "[that this fact] makes the emphasized portion of paragraph 4, supra, susceptible to more than one meaning. Was the increase or decrease to be proportionately in amount or percentage? Was it to be based on an average of the increase or decrease of all three defendants?" 154 N.W.2d at 167.

Thus, we find (see n. 2, *supra*) that the trial judge here, in considering the pleadings, exhibits, pre-trial order, stipulations, admissions, declarations, affidavits, etc., did precisely what the Iowa courts say he should have done; he "[gave] the contract the practical meaning placed upon it by the parties." (Keding v. Barton, *supra*, 154 N.W.2d at 175.) Although he did not think the words "unrestricted right to terminate" ambiguous, he had before him for his consideration "[t]he practical construction placed upon a contract of doubtful meaning by the parties themselves * * *." (*Wosepka, supra,* 154 N.W. 2d at 172.)

> "Proof of the circumstances may make a meaning plain and clear when in the absence of such proof some other meaning may also have seemed plain and clear. Sometimes the circumstances proof of which is offered do not have any probative value and do not affect a meaning that is arrived at without them. When such is the case, such circumstances are immaterial. In other cases, the testimony of additional factors may not be believed by the trial court after it has been admitted, in which case the meaning of words

that is otherwise 'plain and clear' will be adopted.

"Of course, an otherwise 'plain' meaning should not be disturbed by the proof of irrelevant circumstances or of those having only a remote bearing or inconsequential weight. But until a court knows the circumstances it can not properly say that they have no probative value. Rasch v. City of Bloomfield, [153 N.W.2d 718 (Iowa 1967)]. Citing 3 Corbin on Contracts, section 542." Hamilton v. Wosepka, *supra,* 154 N.W.2d at 171.

Thus, under any view of the law, we find no error on the part of the trial court in relying on the ordinary meaning of the express words after determining it was also the "practical meaning" of the parties, as demonstrated by their undisputed negotiations.

■ Alternatively, appellant argues that the district court erred, as a matter of law, by interpreting the contract so that appellee had the unilateral option after five years to pay or not pay the specified consideration. Our reading of the document convinces us that the court's interpretation was not unreasonable. The fact that consequences resulting from termination within five years are specifically set out while none are listed as flowing from a later termination, convinces us of the correctness of the trial court's judgment. Finding no error, we affirm the trial court's initial granting of appellee's motion for summary judgment.

We next consider that court's subsequent denial of appellant's motion to set aside the ruling and grant a new trial.

A month after summary judgment was entered against him, and two years after the initial filing of the lawsuit, appellant moved under Federal Rules of Civil Procedure 15(a) to amend his First Amended Complaint by adding a second cause of action, for reformation of the contract because of "mutual mistake of the parties." This rested on the same facts theretofore pleaded, but a new legal theory. The district court denied this motion for four reasons: (1) because appellant was long familiar with the facts upon which he based his amendment, he was derelict in not offering the amendment prior to the entering of summary judgment against him; (2) prejudice would result to the appellee, who would be forced to re-prepare for trial on a new theory of liability; (3) the basis of appellant's new claim rested on parol evidence which was inadmissible; (4) even were appellant allowed to amend, his amendment would be subject to a motion to dismiss because the alleged facts did not reveal mistake, fraud or inadvertence. (R.T. 483–484.)

■ While Fed.R.Civ.P. 15(a) requires leave of court, it "shall be freely given when justice so requires." The trial judge has a large judicial discretion in this area. Our scrutiny of the record and appellant's briefs does not reveal any basis in law or policy for reversal of this ruling. *See* Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). We find particularly instructive the district court's statement that:

"it is uncontradicted in affidavits and pleadings * * * that the contract clearly expresses the real intention of the parties. Plaintiff (who was at all relevant times represented by very able counsel) knew that the defendant insisted on the right to terminate clause. In fact, plaintiff's counsel submitted a proposed contract to defendant which excluded the right to terminate during the second five years of the contract. Defendant refused to accept this draft and plaintiff, knowing that he (plaintiff) was giving defendant an unrestricted right to terminate, signed the agreement.

" 'A court of equity will not reform a contract when all of the parties thereto acted with full knowledge of an omission before signing. It is only when stipulations which the parties *intended to express* have been omitted by mistake or through fraud.' (sic) (emphasis added) Graves v. Greenfiel,

196 Iowa 696, 195 N.W. 252 (1923)."
(C.T. 483–484.)

■ It may well be that appellant made a bad bargain with appellee. It may be that as a matter of economic reality he signed not a ten year contract but a five year agreement with an option in appellee to renew. In either event, this court can neither assume to be so powerful nor be so paternalistic as to give appellant a contractual right, where he has none in law. The judgment of the district court is affirmed in all respects.